PEOPLE v STANFORD

1. WITNESSES—HUSBAND-WIFE PRIVILEGE—CONSENT—STATUTES.

   The husband-wife privilege provides, with certain exceptions, that a husband shall not be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent (MCLA 600.2162; MSA 27A.2162).

2. WITNESSES—HUSBAND-WIFE PRIVILEGE—LEGAL MARRIAGE.

   The husband-wife privilege is applicable only where the witness is legally married to the party asserting the privilege.

3. MARRIAGE—COMMON-LAW MARRIAGE—VALIDITY—STATUTES.

   Michigan no longer recognizes a common-law marriage as valid (MCLA 551.2; MSA 25.2).

4. WITNESSES—CRIMINAL LAW—UNAVAILABILITY—TESTIMONY AT PRE-LIMINARY EXAMINATION—RIGHT TO CONFRONT WITNESSES—GOOD FAITH—STATUTES.

   A statute permitting admission of a witness's preliminary examination testimony whenever the witness giving such testimony cannot be produced at trial must give way to a defendant's right of confrontation where the witness's absence stems from the prosecution's lack of good faith efforts to secure the witness's presence (MCLA 768.26; MSA 28.1049).

5. CRIMINAL LAW—WITNESSES—DEMEANOR.

   A defendant has the right to have a witness's demeanor placed before the trier of fact.

6. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESS—DUE DILI-GENCE.

   A trial court's finding that the prosecution used due diligence in

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 81 Am Jur 2d, Witnesses § 148 *et seq.*
[3] 52 Am Jur 2d, Marriage §§ 53–61.
[4] 21 Am Jur 2d, Criminal Law § 340 *et seq.*
[5] 81 Am Jur 2d, Witnesses § 662.
[6] 30 Am Jur 2d, Evidence § 708 *et seq.*
[7, 8] 21 Am Jur 2d, Criminal Law § 20.

attempting to locate a res gestae witness was proper where the police had attempted to contact the witness on several occasions, the police left a subpoena with the witness's sister who said she would deliver it, and the aid of the witness's family was enlisted, but to no avail.

7. CRIMINAL LAW—NONJURY TRIAL—FINDINGS OF FACT—COURT RULES.

A trial judge must make specific findings of fact in a nonjury criminal case; the purpose of these findings is to aid appellate review (GCR 1963, 517.1).

8. CRIMINAL LAW—NONJURY TRIAL—FINDINGS OF FACT—REMAND.

A remand for specific findings of fact is necessary in a nonjury homicide case where the trial judge merely stated his ultimate finding in conclusory language and where the evidence raised questions concerning the possibility of mistake, the extent of an alleged beating, and causation.

Appeal from Wayne, Michael L. Stacey, J. Submitted February 3, 1976, at Detroit. (Docket No. 23259.) Decided March 24, 1976.

Monroe H. Stanford was convicted of manslaughter. Defendant appeals. Remanded for findings of fact.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Robert W. Horn,* Assistant Prosecuting Attorney, for the people.

*Longworth D. Quinn, Jr.,* for defendant.

Before: BASHARA, P. J., and N. J. KAUFMAN and D. F. WALSH, JJ.

N. J. KAUFMAN, J. Defendant was convicted of manslaughter, MCLA 750.321; MSA 28.553, after a bench trial in Wayne County Circuit Court. He

was subsequently sentenced to a term of from 4 to 15 years in prison and now appeals of right.

Defendant's conviction resulted from the death of Ann Harris, his aunt. The prosecution claimed that Ms. Harris' death on April 8, 1974 was caused by a beating which defendant inflicted with his fists. Robert Hendrix, M.D., a witness for the prosecution, testified that, on April 12, 1974, he did an autopsy on the body of Ms. Harris, deceased; that he observed three surgical wounds on the scalp and bruises on the face, chest, arms and legs. He testified that there were "many bruises", several days old. He observed bruises on the eyelid and bridge of the eye and testified that the bruises on the various parts of the body were consistent with physical force, such as a fist fight. Internally, there was bleeding "within the skull and the brain", a subdural hematoma. Direct injury was considered the origin of the bleeding. He testified that, in his opinion, "the brain lesions were produced by physical violence, multiple blows to the head and to the rest of the body".

The decedent's niece, Hazel Peace, testified that she had seen Ms. Harris in the hospital on April 8, 1974, shortly after the incident. Ms. Peace related that decedent's face was bruised and swollen and that decedent had stated that defendant had hit her.

At trial, after a motion by the prosecutor, the court allowed the preliminary examination testimony of one Mary Johnson to be read into evidence. The prosecutor was allowed to introduce the testimony pursuant to MCLA 768.26; MSA 28.1049 upon sufficient proof of the witness's unavailability. Ms. Johnson's testimony was challenged by defense counsel as barred by the husband-wife privilege. Defendant and Ms. Johnson

had lived together and, at the time of the preliminary examination, were affianced. She had given birth to a child by him. The trial court denied this challenge.

Ms. Johnson testified that she had witnessed the alleged beating and that she had seen decedent swing a board at defendant. She testified that defendant had not hit decedent in the head or chest but later stated that defendant had hit decedent in the eye. The prosecution impeached these statements with a prior one in which Ms. Johnson had related that she saw defendant hit Ms. Harris "a number of times".

Defendant took the stand in his own behalf. He testified that on April 8, 1974, decedent had become intoxicated and had started an argument. He claimed that, when his back was turned, decedent swung an object at him. When Mary Johnson yelled, he turned and hit decedent in the eye in a "reflex" action. He claimed that decedent's eye was red from the blow but that he had hit her only once.

On appeal, defendant raises three claims of error, two of which relate to the admissibility of Mary Johnson's preliminary examination testimony. Defendant first contends that the testimony should have been excluded by the husband-wife privilege. This privilege is embodied in MCLA 600.2162; MSA 27A.2162, which provides with certain exceptions not relevant here, that:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent."

Case law is clear in requiring that the privilege be applicable only where the witness is legally

married to the party asserting the privilege. *People v Zabijak,* 285 Mich 164; 280 NW 149 (1938), *People v Minchella,* 268 Mich 123; 255 NW 735 (1934), *cert denied* 293 US 619; 55 S Ct 217; 79 L Ed 707 (1934), *reh den,* 55 S Ct 345; 79 L Ed 707 (1935), *habeas petition denied* 297 US 692; 56 S Ct 384; 80 L Ed 985 (1936). Michigan no longer recognizes as valid common-law marriages. MCLA 551.2; MSA 25.2; *In re Leonard Estate,* 45 Mich App 679; 207 NW2d 166 (1973). Nonetheless, defendant urges that this Court not rigidly apply the requirement of a legal marriage but, instead, look to the relationship of the parties to determine whether the incidents of that relationship are those which the statute was intended to protect. Although the contention is cogent, clear Supreme Court precedent requires that we reject this contention. The Supreme Court or Legislature may alter the rule, but we may not.

Second, defendant asserts that Mary Johnson's preliminary examination testimony should not have been admitted into evidence because plaintiff failed to exercise due diligence in producing her as a res gestae witness. Following a defense objection, the trial court held a hearing to determine if the due diligence requirement had been satisfied. This objection involves the interaction of the res gestae witness rule, MCLA 767.40; MSA 28.980, and the statutory provision allowing admission of a witness's preliminary examination testimony "whenever the witness giving such testimony cannot, for any reason, be produced at trial". MCLA 768.26; MSA 28.1049. In examining this interaction,

"the reasons for the witness's unavailability at trial must be weighed against the defendant's constitutional right of confrontation. *Barber v Page,* 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255 (1968). The Michigan statute

must give way to the right of confrontation where a witness's absence from trial stems from the prosecution's lack of good faith efforts to secure the witness's presence." *People v Nieto,* 33 Mich App 535, 537–38; 190 NW2d 579 (1971). (Footnote omitted.)

See also *People v Herman Brown,* 38 Mich App 69; 195 NW2d 806 (1972). A defendant has the right to have a witness's demeanor placed before the trier of fact.

Defendant, in the instant case, objected to Ms. Johnson's nonproduction under the res gestae witness rule but objected to the introduction of her preliminary examination testimony solely on the basis of privilege. In any case, our review of the record convinces us that the trial court did not, as is required for reversal, abuse its discretion in finding due diligence by the prosecution. *People v Rimson,* 63 Mich App 1; 233 NW2d 867 (1975). The police had, on several occasions, attempted to contact the witness. They had left a subpoena with the witness's sister, who had said that she would deliver it to the witness. The aid of the witness's family was enlisted, but to no avail. The police noted no leads as to her whereabouts. Notwithstanding these facts, we find this to be a close case. Although we might have required a greater effort by police, we cannot find their actions to have been so lacking that the trial court's approval constituted an abuse of discretion.

Defendant's final claim of error is that the trial court failed to make the specific findings required in nonjury criminal cases by GCR 1963, 517.1 and *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973). The court stated:

"This Court finds that the essential elements of the crime of manslaughter, an included offense within the

original charge in this case has been proven beyond a reasonable doubt. That the proof[s] submitted beyond a reasonable doubt prove that the defendant, Monroe H. Stanford, committed this offense, this unlawful killing of one Ann B. Harris without malice, and that indeed the defendant, Monroe H. Stanford, is guilty of the crime of manslaughter."

The purpose of special findings of fact in nonjury criminal cases is to aid appellate review. *People v Robert Jackson,* 63 Mich App 249; 234 NW2d 471 (1975), *People v Owens,* 13 Mich App 469, 483, fn 7; 164 NW2d 712 (1968) (dissent by Levin, J.). Such findings, according to 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 594,

"must disclose the basis for each ultimate fact necessary to sustain the court's conclusions of law. But a mere recital of the conclusory facts which constitute the elements of the cause of action or defense will often be too general and not specific enough."

The Supreme Court noted, however, that where it is apparent from the record that the issues raised were not complex, and that the trial judge was aware of these issues and resolved them, remand is not required. *People v Jackson,* 390 Mich 621, 627, fn 3; 212 NW2d 918 (1973). The Court cited *People v George Scott,* 21 Mich App 217; 175 NW2d 312 (1970), as an example of when a remand is not required. There, before announcing his verdict, the trial judge recited the statutory charge and reviewed the evidence bearing on the sole issue in conflict.

In the instant case, the trial court merely stated his ultimate finding in conclusory language. The evidence raised questions concerning the possibility of mistake, the extent of the alleged beating

and causation. The trial court made no findings on any of these disputes.

We, therefore, remand this case to the trial court which shall, within 60 days, make findings of fact pursuant to GCR 1963, 517.1. We retain jurisdiction.