PEOPLE v BURGESS

Docket No. 78-907. Submitted December 11, 1979, at Detroit.—Decided April 1, 1980. Leave to appeal applied for.

Arthur L. Burgess was convicted of one count of first-degree murder and two counts of second-degree murder, Wayne Circuit Court, Joseph B. Sullivan, J. The defendant appeals, challenging 1) the trial court's instructions to the jury regarding the malice element of first-degree murder, reasonable doubt and the credibility of witnesses, 2) the sufficiency of evidence presented on the element of premeditation, 3) the trial court's characterization of a witness as "unavailable" and the subsequent admission of the witness's preliminary examination testimony, and 4) the admission of evidence of the defendant's prior convictions for impeachment purposes. *Held:*

1. The trial court's instructions to the jury regarding malice, reasonable doubt and the credibility of witnesses conformed with the Michigan Criminal Jury Instructions. There was no error which warrants reversal with respect to the instructions given on reasonable doubt and credibility of witnesses. Technical error did occur in the trial court's instruction on malice. The court failed to tell the jury that a first-degree murder conviction may be premised only upon a finding of an actual intent to kill. The court's instruction on specific intent misstated the law by including language concerning "very high risk" of death which was applicable only in the context of

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 575.

[2] 40 Am Jur 2d, Homicide §§ 42, 44-53, 500.

[3,5] 40 Am Jur 2d, Homicide § 525.

[4] 40 Am Jur 2d, Homicide §§ 45, 47, 52.

[6] 40 Am Jur 2d, Homicide § 527.

[7] 40 Am Jur 2d, Homicide § 52, 284, 439.

[8] 40 Am Jur 2d, Homicide § 439.

[9] 29 Am Jur 2d, Evidence §§ 739, 758.

Admissibility of former testimony of nonparty witness, present in jurisdiction, who refuses to testify at subsequent trial without making claim of privilege. 92 ALR3d 1138.

[10] 29 Am Jur 2d, Evidence § 327.

instructions on the lesser included offense of second-degree murder. However, there was no manifest injustice. The evidence of actual intent to kill was overwhelming and the facts simply do not permit speculation that the jury may have predicated its verdict of guilty of first-degree murder upon a finding that the defendant created a very high degree of risk with knowledge of the probable consequence of death.

2. Premeditation and deliberation need not be demonstrated by direct evidence. The requisite state of mind may be inferred from surrounding facts and circumstances. In the instant case, there was sufficient evidence on the element of premeditation, absent the defendant's extrajudicial admissions, to sustain the first-degree murder conviction.

3. The trial court's characterization of a certain witness as unavailable was justified, as was the admission at trial of the witness's preliminary examination testimony. The witness adamantly refused to testify and the court was not obliged to threaten the witness with contempt charges. Moreover, such a threat to the witness probably would have been an exercise in futility in light of the substantial prison sentence already being served by the witness.

4. There was no error in the trial court's ruling on the admissibility of evidence of certain of the defendant's prior convictions for impeachment purposes. The record shows that the trial court exercised its discretion on the record. The defendant concedes the admissibility of evidence of the 1977 armed robbery conviction. The trial court reasoned, with regard to a 1960 conviction for first-degree murder, that the serious nature of the offense outweighed its remoteness. It was clearly within the court's discretionary power to rule in this manner since the 10-year back rule imposed by the new rules of evidence was not in effect at the time of trial.

Affirmed.

1. CRIMINAL LAW — INSTRUCTIONS TO JURY — CRIMINAL JURY INSTRUCTIONS.

The Michigan Supreme Court has strongly recommended use of the Michigan Criminal Jury Instructions when they are applicable and accurately state the law.

2. HOMICIDE — MURDER — FIRST-DEGREE MURDER — SECOND-DEGREE MURDER — CRIMINAL JURY INSTRUCTIONS.

The Criminal Jury Instructions make no differentiation between first-degree murder and second-degree murder with regard to the element of malice (CJI 16:2:01).

3. Hᴏᴍɪᴄɪᴅᴇ — Fɪʀsᴛ-Dᴇɢʀᴇᴇ Mᴜʀᴅᴇʀ — Lᴇssᴇʀ Iɴᴄʟᴜᴅᴇᴅ Oғғᴇɴsᴇs — Sᴇᴄᴏɴᴅ-Dᴇɢʀᴇᴇ Mᴜʀᴅᴇʀ — Iɴsᴛʀᴜᴄᴛɪᴏɴs ᴛᴏ Jᴜʀʏ.

The trial court in every first-degree murder case is obliged to instruct the jury on the lesser included offense of second-degree murder.

4. Hᴏᴍɪᴄɪᴅᴇ — Fɪʀsᴛ-Dᴇɢʀᴇᴇ Mᴜʀᴅᴇʀ — Pʀᴇᴍᴇᴅɪᴛᴀᴛɪᴏɴ — Dᴇʟɪʙᴇʀ-ᴀᴛɪᴏɴ.

Premeditation and deliberation are the *crucial* elements which distinguish first-degree murder from second-degree murder; however, viewing these two factors as the *sole* source of distinction is misleading because not all malicious, premeditated, deliberated actions resulting in death constitute murder in the first-degree.

5. Hᴏᴍɪᴄɪᴅᴇ — Fɪʀsᴛ-Dᴇɢʀᴇᴇ Mᴜʀᴅᴇʀ — Eʟᴇᴍᴇɴᴛs ᴏғ Cʀɪᴍᴇ — Sᴘᴇᴄɪғɪᴄ Iɴᴛᴇɴᴛ — Iɴsᴛʀᴜᴄᴛɪᴏɴs ᴛᴏ Jᴜʀʏ.

First-degree murder, other than felony murder, is a crime of specific intent requiring an intention to take life; for first-degree murder, specific intent instructions should be given; the jury must be told that a first-degree murder conviction may be premised only upon a finding of actual intent to kill.

6. Hᴏᴍɪᴄɪᴅᴇ — Fɪʀsᴛ-Dᴇɢʀᴇᴇ Mᴜʀᴅᴇʀ — Iɴsᴛʀᴜᴄᴛɪᴏɴs ᴛᴏ Jᴜʀʏ — Sᴘᴇᴄɪғɪᴄ Iɴᴛᴇɴᴛ — Aᴘᴘᴇᴀʟ.

A trial court's technical error in its instructions to the jury on first-degree murder which misstated the law by inclusion of the "very high risk" language applicable only in the context of instructions on the lesser included offense of second-degree murder did not result in manifest injustice and reversal is not warranted where the evidence of the defendant's actual intent to kill and the facts do not permit speculation that the jury may have predicated its verdict of guilty of first-degree murder upon a finding that the defendant created a very high degree of risk with knowledge of the probable cause of death rather than a finding of actual intent to take the victim's life.

7. Hᴏᴍɪᴄɪᴅᴇ — Fɪʀsᴛ-Dᴇɢʀᴇᴇ Mᴜʀᴅᴇʀ — Cᴏʀᴘᴜs Dᴇʟɪᴄᴛɪ — Eᴠɪᴅᴇɴᴄᴇ — Cᴏɴғᴇssɪᴏɴs — Pʀᴇᴍᴇᴅɪᴛᴀᴛɪᴏɴ — Dᴇʟɪʙᴇʀᴀᴛɪᴏɴ.

The corpus delicti of first-degree murder must be established by evidence independent of the confession of the accused; however, premeditation and deliberation need not, indeed cannot, be demonstrated by direct evidence.

8. Hᴏᴍɪᴄɪᴅᴇ — Eᴠɪᴅᴇɴᴄᴇ — Pʀᴇᴍᴇᴅɪᴛᴀᴛɪᴏɴ ᴀɴᴅ Dᴇʟɪʙᴇʀᴀᴛɪᴏɴ — Iɴғᴇʀᴇɴᴄᴇs.

Premeditation and deliberation may be inferred by the surround-

ing circumstances including prior relationships tending to show motive, a murder weapon acquired and positioned in preparation for homicide, evidence in the record supporting the inference that the killer transported the victim to a secluded location for an illicit or criminal purpose, circumstances surrounding the killing suggesting premeditation and deliberation, and organized conduct subsequent to the killing suggesting the existence of a plan.

9. Witnesses — Criminal Law — Preliminary Examination Testimony — Unavailability of Witness — Statutes.

A witness's preliminary examination testimony was properly admitted into evidence where the witness's adamant refusal to testify at trial justified the trial court's characterization of the witness as an unavailable witness; the trial court was not obliged to threaten the witness with contempt charges (MCL 768.26; MSA 28.1049).

10. Criminal Law — Evidence — Prior Convictions — Impeachment — Similar Offenses.

Impeachment of a criminal defendant by evidence of prior convictions for similar offenses should be allowed only with great caution.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: M. J. Kelly, P.J., and M. F. Cavanagh and P. C. Elliott,* JJ.

M. J. Kelly, P.J. Defendant was charged with three counts of first-degree murder contrary to MCL 750.316; MSA 28.548. Following a jury trial defendant was convicted of the first-degree murder of Leslie Kinsman and the second-degree murders of Victor Bossio and James Ketelaar. Defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

received a life sentence on each conviction and now brings this appeal as of right.

On appeal, defendant makes several claims of error concerning the trial court's instructions to the jury regarding the malice element of first-degree murder, reasonable doubt, and the credibility of witnesses. In each instance, the instructions given conformed with Michigan Criminal Jury Instructions. The Supreme Court has strongly recommended use of these instructions when they are applicable and accurately state the law. *People v Thomas,* 85 Mich App 618, 625; 272 NW2d 157 (1978), *People v Hernandez,* 80 Mich App 465; 264 NW2d 343 (1978). With respect to the instructions given on reasonable doubt and credibility of witnesses, we find no error which warrants reversal.

Defendant argues that the following instructions related to both first and second-degree murder incorrectly defined the element of malice:

"Forthly *[sic],* for murder, you must find that the Defendant consciously and knowingly performed the act, which caused death. The defendant must have, either intended to kill, that is, he must have done the act intending that it resulted in death, or in great and serious bodily injury, or he must have knowingly created a very high risk of death, with the knowledge that it probably would cause death."

It is defendant's position that the verdicts are invalid because they may have been predicated upon a finding that the defendant did not intend to kill, but that he created a very high risk of death with knowledge of its probable consequences. Defendant relies on *People v Milton,* 81 Mich App 515, 518; 265 NW2d 397 (1978), in which a panel of this Court stated:

"Mere conscious indifference to the likelihood of death as a result of a person's intentional act is not enough; to commit first-degree murder, a person must act with the purpose of causing death. *People v Garcia,* 398 Mich 250, 259; 247 NW2d 547 (1976)."

We note initially that the court's instructions in the case at bar closely paralleled CJI 16:2:01. Wilful, deliberate and premeditated murder and the lesser included offense of second-degree murder are combined for instructional purposes with the admonition that a conviction for first-degree murder requires proof beyond a reasonable doubt of the additional elements of premeditation and deliberation. There is no differentiation made in CJI 16:2:01 between the degrees of murder with regard to the element of malice:

"(2) There are two kinds of murder, first degree and second degree, and you will be instructed as to both. [Murder of either degree is the killing of one person by another with malice. Malice is a term with special meaning in the law. Malice means that the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that it probably would result in death, and that he did so under circumstances which did not justify, excuse or lessen the crime.]

\* \* \*

"(10) Fourth, for murder you must find that the defendant consciously and knowingly performed the act which caused death. The defendant must have either intended to kill, that is, he must have done the act intending that it result in death or in great and serious bodily injury, or he must have knowingly created a very high risk of death with the knowledge that it probably would cause death.

"(11) The degree of risk for murder must be so reckless and wrongful as to amount to a criminal purpose aimed against a person's life, and the defendant must have been conscious of that risk."

In the instant case the challenged "risk" language was properly included in the trial court's charge to the jury; in every case of first-degree murder the court is obliged to instruct, *sua sponte,* on the lesser included offense of second-degree murder. *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975). Neither *Milton* nor *Garcia* purports to criticize or reject the above definition of malice as an element of second-degree murder. The single consideration here is whether the court must specify, when employing the "risk" language, that its application is limited to the lesser offense of second-degree murder. In order that the instructions accurately reflect the law of this jurisdiction, this point of clarification is vital. To avoid confusion, it is highly advisable to make this distinction during the general murder instructions as well as when instructing on the specific intent required for first-degree murder.

The ambiguity present in CJI and general confusion surrounding the issue of the requisite intent for first-degree murder stems, as the *Garcia* Court indicates, from the terminology found in second-degree murder cases which is inappropriate when transferred to the first-degree murder context. Premeditation and deliberation are the *crucial* elements which distinguish first-degree from second-degree murder. See, *e.g., People v Vail,* 393 Mich 460, 468; 227 NW2d 535 (1975), *People v Morrin,* 31 Mich App 301, 326; 187 NW2d 434 (1971). Viewing the factors as the *sole* source of distinction, however, is misleading,; not all malicious, premeditated, deliberated actions resulting in death constitute murder in the first degree. Perkins offers the example of an individual who wishes to destroy certain property by explosion. Conscious of the very high degree of risk that

someone will be killed, and after taking all possible precautions short of abandoning his plan, he proceeds to cause the explosion which results in a person's death. His premeditated, deliberated act, executed with reckless disregard of its probable consequences, constitutes murder. Perkins, Criminal Law (2d ed), p 36. See also LaFave & Scott, Criminal Law, § 70, p 543. Absent is the actual intent to kill which would elevate the crime to first-degree murder.

Early Michigan Supreme Court cases hold that legislative refinement of the common-law definition of murder, dividing the crime into degrees of seriousness, was accomplished for the purpose of reducing the severity of punishment imposed upon those guilty of "wanton act" murder as opposed to first-degree murder. The Court made its position clear in *People v Potter,* 5 Mich 1, 7 (1858):

"Now, at the common law, if a mortal blow was malicious, although not given with intent to kill, or if death ensued from an act accompanying an unlawful collateral act, or under circumstances which showed general malice, such as a reckless disregard of the safety or lives of others, the killing would be murder, and would be punishable in the same manner as though perpetrated with the deliberate design of taking the life of the victim. It was to mitigate the punishment for this class of murders, and to leave it to the discretion of the court, to a considerable extent, that our statute was passed; while for murder perpetrated willfully, or in the perpetration, or attempt to perpetrate, either of the four felonies mentioned, the punishment is inflexibly fixed by the law. Hence, in defining the first degree of murder, the statute specifies two instances in which willfulness, deliberation, and premeditation are most strongly indicated, viz., the use of poison, and lying in wait; and then provides that *all other* willful, deliberate, and premeditated killing, should also be murder in the same degree. The more atrocious crime is separated

from the general class of murder; and, it would seem to follow that to establish murder in the first degree, more proof is necessary than of the single fact of malicious homicide, and that it must be shown that the killing was willful, and with design to take the life of the victim."

See also, *People v Scott,* 6 Mich 287 (1859), *People v Doe,* 1 Mich 451, 457 (1850). The *Potter* Court continued:

"Now, malice aforethought is either express or implied, and there can be no case of murder in the first degree, except when committed in the perpetration, or attempt to perpetrate, arson, rape, robbery, burglary, or when there does not exist *express* malice; while, in case of murder in the second degree, the malice is generally, if not universally, *implied."* 5 Mich 1, 9.

The term "express malice" has generally been interpreted as an intent to kill, Perkins, *supra,* at 49; malice is "implied" when "there is no showing of actual intent to kill, but death is caused by acts which the law regards as manifesting such an abandoned state of mind as to be equivalent to a purpose to murder". 40 CJS, Homicide, § 16, p 863. The Supreme Court, in *People v Garcia, supra,* has terminated all doubt that first-degree murder requires an actual intent to kill:

"This classification of murder by degree was first enacted by the State of Pennsylvania in 1794. In 1838, motivated by a concern that the more culpable forms of murder should be punished more severely, this state adopted a similar statutory scheme. *People v Potter,* 5 Mich 1, 6 (1858); *People v Morrin,* 31 Mich App 301, 325; 187 NW2d 434 (1971).
"Courts in Pennsylvania have consistently held that their first-degree murder statute requires a specific intent to kill. *Commonwealth v Murray,* 2 Ashm (Pa) 41

(Phila O & T, 1834); *Commonwealth v Fostar,* 455 Pa 216; 317 A2d 188 (1974).

\* \* \*

"In hopes of ending the confusion and on the author-ity in *Potter* and *Scott,* we hold that nonfelony first-degree murder is a specific intent crime requiring an intention to take life.

"Our holding is supported by the language of the first-degree murder statute.

'All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing \* \* \* shall be mur-der of the first degree'. MCLA 750.316; MSA 28.548.

"A reading of the statute mandates the construction that 'wilful \* \* \* killing' means the intent to accom-plish the result of death." 398 Mich 250, 258-259.

In accord with the *Garcia* decision, CJI includes a note advising that, for first-degree murder, spe-cific intent instructions also be given. At this point the trial court must crystallize the first/second-degree murder intent distinction for the jury. The jury must be told that a first-degree murder con-viction may be premised only upon a finding of actual intent to kill. It was at this point that technical error occurred in the case at bar. The court's specific intent instructions misstated the law by inclusion of the "very high risk" language applicable only in the context of instructions on the lesser included offense of second-degree mur-der.

Although error is present, reversal is not war-ranted in the absence of manifest injustice. *People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977). The evidence of actual intent to kill was overwhelming. The facts simply do not permit speculation that the jury may have predicated its verdict upon a finding that defendant created a very high degree of risk with knowledge of the

probable consequence of death. Furthermore, the error here is not of the same magnitude as that which occurred in *Milton*. The *Milton* trial court not only failed to clarify the definition of malice as applicable to first-degree murder but totally eliminated premeditation and deliberation instructions. The trial court in the instant case carefully explained these elements and instructed the jury at this point to consider whether the evidence demonstrated a preconceived design to "take the victim's life". We do not suggest that in all circumstances the above statement would be sufficient to differentiate the degrees of murder without, in addition, correct specific intent instructions. However, the whole record in this case convinces us that the established error does not mandate reversal.

Defendant next urges reversal of his first-degree murder conviction, challenging the sufficiency of the evidence presented on the element of premeditation. Defendant is correct in his assertion that the corpus delicti of first-degree murder must be established by evidence independent of the confession of the accused, *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973). But premeditation and deliberation need not, indeed cannot, be demonstrated by direct evidence. The requisite state of mind may be inferred from surrounding facts and circumstances, including; a prior relationship to the parties indicating a motive, the use of a weapon acquired in preparation for the homicide, circumstances and events surrounding the killing, and the defendant's subsequent conduct suggestive of a scheme or plan. *People v Germain,* 91 Mich App 154, 165; 284 NW2d 260 (1979). See also *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975).

In the case at bar, trial testimony revealed defendant's animus for the decedent Leslie Kins-

man both as a sexual rival and as a competitor in the narcotics trade. This discordant prior relationship provided the motive for the killing. Circumstances and events preceding the killing, including defendant's entry into the landlord's residence, his direction that the landlord, Mr. Bossio, lure Kinsman downstairs on the premise that he needed to discuss something, and the fact that the victim was bound with electrical wire before being stabbed and shot, are suggestive of a scheme or plan. Therefore, there was sufficient evidence on the element of premeditation, absent defendant's extrajudicial admissions, to sustain the first-degree murder conviction.

We also find that witness Scott Croydon's adamant refusal to testify at trial justified the court's characterization of Croydon as an "unavailable" witness and the admission of his preliminary examination testimony. MCL 768.26; MSA 28.1049, *People v Walton,* 76 Mich App 1; 255 NW2d 640 (1977), *People v Pickett,* 339 Mich 294; 63 NW2d 681 (1954). The trial court was not obliged to threaten the witness with contempt charges; moreover, in light of the substantial prison sentence already being served by this witness, such a warning would probably have been an exercise in futility.

Finally, we find no error in the trial court's ruling on the admissibility of evidence of certain prior convictions for impeachment purposes. Defendant's brief concedes the admissibility of evidence of the 1977 armed robbery conviction. Contrary to defendant's position, an examination of the record shows that the trial court exercised its discretion on the record. With specific reference to the 1960 conviction for first-degree murder, the trial court reasoned that the serious nature of the

offense outweighed the remoteness argument. It was clearly within the court's discretionary power to rule in this manner since the 10-year-back rule imposed by the new rules of evidence was not in effect. Though evidence of similar crimes should be admitted with great caution, *People v Green,* 86 Mich App 142; 272 NW2d 216 (1978), *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979), we cannot say that the trial court's willingness to admit evidence of prior murder convictions constitutes an abuse of discretion. We find no affirmative misapplication of the standards enunciated in *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978), and *People v Baldwin, supra,* which warrants reversal, nor will we presume error from an otherwise silent record. *Crawford, supra, Baldwin, supra, People v Roberson,* 90 Mich App 196; 282 NW2d 280 (1979).

Affirmed.