PEOPLE v GILBERT

Docket No. 78-2678. Submitted June 2, 1980, at Lansing.—Decided November 19, 1980.

Ralph J. Gilbert was charged with three counts of murder and, following a nonjury trial in Saginaw Circuit Court, Fred J. Borchard, J., was found guilty of three counts of murder in the first degree. While hunting, defendant killed a woman and her two children. The woman had been shot in the head, sexually assaulted and had her throat slashed. The two children had been stabbed and had their throats slashed. An attempt had been made to conceal the bodies. With respect to the woman, defendant was charged in the alternative with premediatated murder and murder during the perpetration or attempted perpetration of a rape. Defendant's defense was diminished capacity, alleging sudden impulse. The prosecution moved for and was granted diagnostic examination of the defendant and discovery of reports by defendant's psychiatric witnesses. At trial, testimony that defendant shot and killed two dogs shortly before the murders was admitted into evidence. The trial judge found that the defendant had intentionally murdered the three victims, that the murders were premeditated and deliberate, and that the defendant thought out and consciously reflected upon his decision to murder and the means to effect it. The defendant appeals. *Held:*

1. The findings of fact by a trial court sitting without a jury

REFERENCES FOR POINTS IN HEADNOTES
[1] 76 Am Jur 2d, Trial §§ 1250, 1253, 1259.
[2] 40 Am Jur 2d, Homicide § 472.
[3] 5 Am Jur 2d, Appeal and Error § 974.
    40 Am Jur 2d, Homicide § 470.
[4-6] 40 Am Jur 2d, Homicide §§ 246, 263, 432, 433.
    Presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.
[7] 21 Am Jur 2d, Criminal Law § 48.
    40 Am Jur 2d, Homicide § 115.
[8] 21 Am Jur 2d, Homicide §§ 72, 79.
[9] 21 Am Jur 2d, Homicide § 315.
    29 Am Jur 2d, Evidence §§ 355, 266.

must be made with the degree of specificity necessary to disclose the basis for each of the court's critical determinations. Since the trial court specifically found that the defendant thought out and consciously reflected on his intent to murder his victims and the means to accomplish the acts, the trial court's findings were sufficient to support the court's finding that the defendant had the necessary premeditation and deliberation.

2. The trial court's finding of premeditation and deliberation implicitly rejected the defendant's claim that his acts were the result of sudden impulse.

3. The trial court's finding of first-degree murder by premeditation and deliberation necessitates the conclusion that the trial court considered the alternative charge of felony murder during the commission of a rape and resolved that question in favor of the defendant in view of the fact that the trial court expressly recognized the existence of the felony murder charge. Under such circumstances, a remand for further specific findings of fact by the trial court relative to the alternative felony murder charge is not necessary.

4. The corpus delicti of first-degree murder must be established by evidence independently of the confession of the accused. Premeditation and deliberation, necessarily, must be inferred from the surrounding facts and circumstances and are established by evidence of a lapse of time which is sufficient to permit the defendant to take a "second look" at his contemplated actions. Factors from which this "second look" may be inferred include: any prior relationship of the defendant and the victim indicative of motive, the defendant's actions prior to the murder, the facts and circumstances of the killing, and the defendant's later conduct suggesting a scheme or plan.

5. The trial court properly inferred premeditation and deliberation by defendant from the evidence that the defendant indicated a sexual interest in one of his victims, the nature and manner of the sexual assault and the murders, the situs of the murders and the attempts to conceal the bodies. The methodical manner of the murders belies any claim of panic or sudden impulse.

6. The defense of diminished capacity comes within the statutory definition of insanity; therefore, the prosecution has the same statutory rights to discovery and psychiatric examination of the defendant upon the claim of diminished capacity as are available when the defense of insanity is claimed.

7. The charge of murder "in the perpetration or attempted

perpetration of a rape" charged a crime cognizable in Michigan, since, although the charge was brought after the enactment of the criminal sexual conduct law, the charge was brought prior to the amendment of the first-degree murder statute which replaced the reference to rape with the reference to criminal sexual conduct.

8. The evidence of the defendant having killed two dogs prior to the murders was properly admitted since it was probative of the question of the defendant's state of mind at the time of the murders. The risk of prejudice by the use of such evidence was minimized by the fact that the trial was before a judge rather than a jury.

Affirmed.

1. CRIMINAL LAW — COURTS — NONJURY TRIALS — FINDINGS OF FACT — COURT RULES.

A trial court sitting in a nonjury criminal trial must make findings of fact which cover the court's steps in making its findings with the degree of specificity necessary to disclose the basis for each critical determination (GCR 1963, 517.1, 785.1[1]).

2. HOMICIDE — COURTS — NONJURY TRIALS — FINDINGS OF FACT — PREMEDITATION AND DELIBERATION — SUDDEN IMPULSE.

Findings of fact by a trial court sitting in a nonjury murder trial are sufficient with respect to the elements of premeditation and deliberation where the trial court finds that the defendant thought out in advance and consciously reflected on his intent to murder the victims and the means to accomplish the acts; such findings implicitly reject a claim that the acts were the result of a sudden impulse.

3. HOMICIDE — COURTS — NONJURY TRIAL — FINDINGS OF FACT — PREMEDITATED MURDER — FELONY MURDER.

The failure of a trial court in a nonjury murder trial to make specific findings on an alternative charge of felony murder, the court having found premeditated murder, does not require remand for a more detailed finding of fact, since the finding of premeditated murder necessitates the conclusion that the trial court considered the felony murder charge and resolved that question in favor of the defendant.

4. HOMICIDE — FIRST-DEGREE MURDER — CORPUS DELICTI — EVIDENCE — CONFESSIONS — PREMEDITATION AND DELIBERATION — INFERENCES.

The corpus delicti of first-degree murder must be established by evidence independently of the confession of the accused; how-

ever, premeditation and deliberation, necessarily, must be inferred from the surrounding facts and circumstances.

5. HOMICIDE — EVIDENCE — PREMEDITATION AND DELIBERATION — INFERENCES.

Premeditation and deliberation are established by evidence of a lapse of time which is sufficient to permit the defendant an opportunity to take a "second look" at his contemplated actions; factors from which sufficient opportunity for a "second look" may be inferred include: any prior relationship of the defendant and victim indicative of motive, the defendant's actions prior to the murder, the facts and circumstances of the killing, and the defendant's later conduct suggesting a scheme or plan.

6. HOMICIDE — EVIDENCE — PREMEDITATION AND DELIBERATION — INFERENCES — SUDDEN IMPULSE.

Premeditation and deliberation may be properly inferred from evidence that a defendant indicated a prior sexual interest in one of his victims, that one of the victims was shot, had her throat slit and was sexually assaulted, that other victims were stabbed and had their throats slit, and that the murders took place in a remote area and attempts to conceal the bodies were made; the methodical manner of the murders belies any claim of panic or sudden impulse.

7. CRIMINAL LAW — EVIDENCE — DIMINISHED CAPACITY — INSANITY — DISCOVERY — PSYCHIATRIC EXAMINATION — STATUTES.

The defense of diminished capacity comes within the statutory definition of insanity; therefore, the prosecution has the same statutory rights to discovery and psychiatric examination of the defendant when a claim of diminished capacity is made as are available when the defendant's defense is insanity (MCL 768.20a[2], [6], 768.21a[1]; MSA 28.1043[1][2], [6], 28.1044[1][1]).

8. HOMICIDE — FIRST-DEGREE MURDER — RAPE — CRIMINAL SEXUAL CONDUCT — CRIMES — STATUTES.

A charge of murder "in the perpetration or attempted perpetration of a rape" brought subsequent to the enactment of the criminal sexual conduct law but prior to the amendment of the first-degree murder statute which replaced the reference to rape by a reference to criminal sexual conduct charges a crime cognizable under Michigan law (MCL 750.316, 750.520a *et seq.;* MSA 28.548, 28.788[1] *et seq.).*

9. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — ADMISSIBILITY — RULES OF EVIDENCE.

    The admission of evidence of similar bad acts by a criminal defendant is proper where: (1) there is substantial evidence showing that the defendant committed the bad act, (2) the bad act tends to prove a purpose permitted under the Michigan Rules of Evidence, (3) the purpose is at issue, and (4) the probative value of the evidence being admitted outweighs its prejudicial effect; accordingly, in a murder trial in which the defendant's defense is diminished capacity, evidence that the defendant killed two dogs prior to the murder is properly admitted since it bears upon the defendant's state of mind in the hours before the murder (MRE 404[b]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Patrick M. Meter,* Chief Assistant Prosecuting Attorney, for the people.

*P. E. Bennett,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

M. J. KELLY, J. Defendant appeals as of right from his conviction and sentence on three counts of first-degree murder, contrary to MCL 750.316; MSA 28.548, following a bench trial concluded December 19, 1977. On April 17, 1978, defendant was sentenced to the mandatory three concurrent terms of life imprisonment.

On October 10, 1977, defendant was hunting with a companion, Theodore Kryzaniak, in the Dice Lake area of Saginaw County. Defendant was armed with a Huntmaster .22-caliber pump action rifle and a Puma Werk hunting knife. After entering a wooded area, the two men proceeded to their

---

* Circuit judge, sitting on the Court of Appeals by assignment.

respective hunting blinds. While seated in his blind, Kryzaniak heard several shots emanating from the direction of defendant's blind. Kryzaniak proceeded to the defendant's blind, where he discovered two dogs which had been shot. The defendant admitted he shot the dogs.

At about 5:30 p.m., Kryzaniak and the defendant took a walk up to Dice Lake, where they observed a woman (later identified as Jeanne Gehrcke) and two small children preparing to fish. Upon finishing the walk, Kryzaniak returned to his blind. Defendant said he preferred to hunt in a different area and proceeded in a northerly direction away from the location of his blind. At about 6 p.m. defendant was seen by three persons, who testified defendant was approaching the small peninsula from which the woman and two children were fishing. Kryzaniak later heard a single gunshot north of the area of his blind. Approximately one hour later, Kryzaniak proceeded to defendant's blind, to which defendant had returned. The two men then went home. At 5 p.m. the next day, the bodies of the woman and her two children were found near a small dirt fireroad near the lake. The woman had been shot in the back of the head, sexually assaulted and her throat slashed. The boys were each found stabbed in the chest and their throats had been slashed.

Prior to trial, the defendant was examined by four expert psychiatric witnesses, two for each side. The defendant's statements to these experts disclosed the following specifics regarding the three murders. Defendant said that he had been walking behind Jeanne Gehrcke as she was leaving the Dice Lake area and had been toying with the idea of having sex with her. He had the urge to shoot something, so he flipped off the safety of

his rifle and shot Mrs. Gehrcke in the back of the head. He dragged her off to the side of the road and had intercourse with her. He killed the boys so there would be no surviving witnesses and slashed Jeanne Gehrcke's throat either in an attempt to conceal the true cause of her death or to make sure that she was dead.

At trial, defense counsel admitted that defendant perpetrated the three homicides, but argued that the defendant did not at the time exhibit sufficient malice, intent or premeditation necessary for first-degree murder. Defendant's expert psychiatric witnesses asserted that defendant had panicked during the murders and had acted impulsively and without premeditation. They did not, however, testify that defendant was insane or had acted out of an irresistable impulse.

In its findings of fact, the trial court rejected the defense witnesses' testimony. The court concluded that defendant intentionally murdered the three victims, that the murders were premeditated and deliberate and that defendant thought out and consciously reflected upon his decision to murder and the means to effect it. On appeal, the defendant raises five issues.

Defendant first argues that the trial court made insufficient findings of fact to support its verdict. (See Appendix A.) Specifically, defendant alleges that the trial judge made inadequate findings of fact on the elements of premeditation and deliberation. Defendant also asserts as error the trial judge's failure to make factual findings on first-degree felony murder during commission of a rape, an offense for which defendant was charged in the alternative for the murder and sexual assault of Jeanne Gehrcke.

The adequacy of a trial court's findings of fact is

governed by GCR 1963, 517.1, which provides in relevant part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the fact specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. It will be sufficient if the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over elaboration of detail or particularization of facts."

See *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973). See also *People v Bruce Ramsey,* 89 Mich App 468; 280 NW2d 565 (1979), and *People v Brooks,* 75 Mich App 448, 450; 254 NW2d 926 (1977), for cases interpreting the *Jackson* finding of fact requirement as an application of the requirements of GCR 1963, 517.1 to criminal cases in accordance with the provisions of GCR 1963, 785.1(1). In 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 594, the authors suggested an oft-quoted analysis of the rule's mandate:

"The findings must disclose the basis for each ultimate fact necessary to sustain the court's conclusions of law. But a mere recital of the conclusory facts which constitute the elements of the cause of action or defense will often be too general and not specific enough. Findings that defendant was 'negligent' and that plaintiff was not 'contributorially negligent,' unsupported by more specific factual findings, would not satisfy the purpose of the rule.

\* \* \*

"The findings of fact must include as much of the subsidiary facts as is necessary to disclose the steps by which the trial court reached its ultimate conclusion on each factual issue. The findings should be made at a level of specificity which will disclose to the reviewing

court the choices made as between competing factual premises at the critical point that controls the ultimate conclusion of fact. That is, at the point where a given choice as to the concrete facts leads inevitably to the ultimate conclusion, the findings should disclose the choice which was made, so that the appellate court may test the validity of its evidentiary support."

See also *People v Robert Jackson (After Remand)*, 63 Mich App 249, 253; 234 NW2d 471 (1975), and *People v Stanford*, 68 Mich App 168, 174; 242 NW2d 56 (1976), applying the same suggested analysis to findings of fact in criminal cases.

Exclusive to a finding of guilt for first-degree murder are the elements of premeditation and deliberation. MCL 750.316; MSA 28.548, *People v Germain*, 91 Mich App 154; 284 NW2d 260 (1979). The testimony at trial was conflicting as to these elements. We do not, however, find the trial court's factual findings insufficient. The trial judge concluded that defendant thought out in advance and consciously reflected on his intent to murder the victims and the means to accomplish the acts. The trial judge also noted an adequate period of time over which the defendant's plan was established. These findings implicitly reject defendant's claim that his acts were the result of a sudden impulse. As such, the lower court's conclusion in favor of that evidence suggesting a carefully planned, deliberate series of acts by the defendant is clear. We thus find no merit in the defendant's claimed error.

Defendant also argues as error the trial judge's failure to make specific findings on the alternate charge of felony murder during the commission of a rape. In *Jackson, supra*, 627, fn 3, the Supreme Court noted an exception to the requirements of GCR 1963, 517.1:

"A judge's failure to find the facts does not require remand where it is manifest that he was aware of the factual issue, that he resolved it and it would not facilitate appellate review to require further explication of the path he followed in reaching the result as, for example, where the only factual issue is identification."

Accord, *People v Jackson,* 81 Mich App 18; 264 NW2d 101 (1978). In his findings, the trial judge expressly noted that defendant was charged in the alternative with felony murder. The subsequent verdict finding defendant guilty of the first-degree murder of Jeanne Gehrcke necessitates a conclusion that the felony murder charge was resolved in favor of defendant. Thus, a remand for more detailed fact finding is not required.

Defendant next argues that the trial court had before it insufficient evidence to establish premeditation and deliberation and that the corpus delicti of the offense was not established. He claims that the only evidence suggestive of these required elements was the statements made to various expert witnesses who later testified regarding defendant's mental capacity. Defendant correctly notes that the corpus delicti of first-degree murder must have been established independently of his out of court statements. *People v Allen.* 390 Mich 383; 212 NW2d 21 (1973). However, the defendant's state of mind at the time of the murders must necessarily be inferred from surrounding facts and circumstances. *People v Burgess,* 96 Mich App 390; 292 NW2d 209 (1980. To establish premeditation and deliberation a court must find a lapse of time sufficient to have permitted the defendant an opportunity to take a "second look" at his contemplated actions. *People v Tilley,* 405 Mich 38, 45; 273 NW2d 471 (1979). In *People v Meadows,* 80 Mich App 680, 691; 263 NW2d 903 (1977), the

Court described four factors indicating sufficient opportunity for a "second look", including: (1) any prior relationship of the defendant and victim indicative of a motive, (2) the defendant's actions prior to the murder, (3) the facts and circumstances of the killing, and (4) the defendant's later conduct suggesting a scheme or plan. See also *Burgess, supra,* and *Germain, supra.*

Our review of the record shows that sufficient evidence was admitted, *aliunde* the defendant's statements, to establish premeditation and deliberation. Upon first seeing Jeanne Gehrcke, defendant indicated a sexual interest in her. Defendant was also seen approaching the victims shortly before the killings were committed. To kill Mrs. Gehrcke defendant used both his rifle and a knife and committed a sexual assault on her. Thereafter, the defendant stabbed the two boys. Additionally, all three victims' throats were slashed in a similar manner. Finally, the murders were accomplished in a remote area and subsequent attempts to conceal the bodies were made. Based upon these factors, it may be inferred that the defendant had sufficient time to take a "second look" at his intended acts. The claim that defendant "panicked" during the commission of his criminal acts does not detract from this conclusion. The evidence discloses that defendant planned his acts well in advance of their implementation. Also, the methodical manner in which the murders were committed belies any claim of panic or sudden impulse. Therefore, sufficient evidence of premeditation and deliberation was presented to uphold defendant's first-degree murder conviction.

Defendant next urges reversible error in the trial court's decision granting the prosecution's pretrial motions for diagnostic examination of the

defendant and for discovery of the reports prepared by the defendant's psychiatric witnesses. Specifically, defendant contends that because he did not give notice of a proposed insanity defense under MCL 768.20a; MSA 28.1043(1), the prosecutor's right to discover defense psychiatric reports or to subject defendant to examination by the state's psychiatrist was foreclosed. MCL 768.20a(2), (6); MSA 28.1043(1)(2), (6).

The defense of diminished capacity has been found by this Court to be included in the definition of insanity, MCL 768.21a(1); MSA 28.1044(1)(1), *People v Mangiapane,* 85 Mich App 379, 395; 271 NW2d 240 (1978). As a result, a defendant proposing a diminished capacity defense is subject to the same prosecutorial rights of discovery and forensic examination as would arise from a formal claim of insanity. As stated by the *Mangiapane* Court:

"We find that the defense known as diminished capacity comes within this codified definition of legal insanity. We further find that psychiatric testimony on the issue of defendant's capacity to form the specific intent comes within the codified definition of legal insanity. By thus categorizing defendant's defense we do not preclude the admission of evidence supporting defendant's claim that, although not legally insane, he lacks mental capacity to entertain the specific intent that is a necessary element of assault with intent to commit murder. But, we hold that defendant must give the notice required by the statute of intention to assert that defense. By so doing, defendant will submit herself to examination and evaluation by the Center for Forensic Psychiatry and by an independent psychiatrist selected by the prosecutor, if the prosecutor wishes. *In short, we hold that if defendant chooses to avail himself of the defense that he here asserts, namely, that he lacks mental capacity to entertain the specific intent required as an element of the crime with which he is*

*charged whether it be called the defense of diminished
capacity or not, then full compliance must be had with
§§ 20a, 29a and 36."* (Emphasis added.)

We agree with this rationale, and find defendant's proffered diminished capacity defense adequate to permit the prosecutorial discovery and examination required under §§ 20a(2) and 20a(6). Therefore, the prosecutor's pretrial motions were not improperly granted.

Defendant's fourth claim of error alleges an improper felony murder charge. He asserts that the information accusing him of murder "while in the perpetration or attempted perpetration of a rape", charged an offense no longer cognizable under Michigan law. We note the recent Supreme Court decision in *People v McDonald,* 409 Mich 110; 293 NW2d 588 (1980), as dispositive of this issue. The defendant's claim of error is thus without merit.

Lastly, defendant alleges reversible error in the trial court's decision to admit testimony that defendant shot two dogs prior to the murders. Generally, evidence of a distinct unrelated criminal activity is not admissible at the trial of a defendant charged with commission of a different criminal offense, because such evidence tends to be used to convict a defendant for being a bad man and not for his actual conduct regarding the offense charged. *People v Spillman,* 399 Mich 313; 249 NW2d 73 (1976), *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), and *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973).

An exception to the general rule is found in MRE 404(b), which supersedes the prior similar acts statute, MCL 768.27; MSA 28.1050. MRE 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged."

In *People v Cramer,* 97 Mich App 148, 155; 293 NW2d 744 (1980), the Court discussed the scope of this rule:

"However, the list of exceptions to the general rule found in MRE 404(b) is not exhaustive. No mechanical or fixed rule can encompass all of the possible reasons for which evidence of the defendant's other bad acts might be admissible at the trial on an unrelated charge. Indeed, the language used in MRE 404(b) makes clear that the evidence may be admissible for any purpose other than to prove the character of a person in order to show that he acted in conformity therewith. The list of those 'other purposes', *e.g.,* motive, opportunity, intent, preparation, etc., must be viewed as examples, and not the exclusive grounds on which such evidence is rendered admissible as an exception to the general rule. *People v Fisher,* 77 Mich App 6, 11; 257 NW2d 250 (1977), *lv den,* 402 Mich 811 (1977). See *e.g. People v Nawrocki,* 376 Mich 252, 255; 136 NW2d 922 (1965)."

When sought to be admitted, similar acts evidence must exhibit four essential factors: (1) there must be substantial evidence showing defendant committed the bad act, (2) the bad act must tend to prove a purpose permitted under the rule, (3) the purpose must be in issue, and (4) the probative value of the evidence to be admitted must outweigh its prejudicial effect. *People v Rohn,* 98 Mich App 593; 296 NW2d 315 (1980), *People v*

*Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978), *lv den* 406 Mich 857 (1979).

Applying the above standards, it is apparent that the similar act evidence herein was properly admitted as bearing upon the critical issue of defendant's state of mind in the hours before the murders. Additionally, presentation of such evidence in a nonjury trial does not carry with it the risk of prejudice presented by admission before a jury. We thus conclude that admission of the defendant's prior bad act was not error.

Affirmed.

## APPENDIX A

At the close of trial, the trial judge entered the following findings of fact:

"THE COURT: This is a verdict in the case of the People of the State of Michigan versus Ralph John Gilbert.

"Let the record reflect that this cause came on to be heard without a jury, the defendant having waived his constitutional right to jury trial in writing in open court. Defendant Ralph John Gilbert is charged in Count I with the crime of murder in the first degree under alternate theories and the law insofar as it applies to Count I of the Information states that all wilful, deliberate and premeditated murder shall be murder in the first degree; and, further, that any murder committed in the perpetration or attempt to perpetrate a rape shall be murder in the first degree.

"Defendant Ralph John Gilbert is charged in Counts II and III of the Information with murder in the first degree and the law insofar as it applies to Counts II and III states that all wilful, deliberate and premeditated murder shall be murder in the first degree.

"The Court having considered the testimony of the witnesses and having determined their credibility and the weight to be given their testimony and after having

examined certain exhibits received during the course of the trial finds the following: The Court finds that the People have proved beyond a reasonable doubt that Jeane *[sic]* Verna Gehrcke, Mark Gehrcke and Keith Gehrcke all died on October 27, 1976 in Thomas Township, Saginaw County, Michigan, and that the defendant, Ralph John Gilbert, directly caused the deaths of Jeane *[sic]* Verna Gehrcke and Mark Gehrcke and Keith Gehrcke. Specifically, the Court finds that the People have proved beyond a reasonable doubt that the defendant, Ralph John Gilbert, intentionally shot and killed Jeane *[sic]* Verna Gehrcke and cut her throat.

"The Court finds that the People have proved beyond a reasonable doubt that the defendant, Ralph John Gilbert, intentionally and fatally stabbed both Mark Gehrcke and Keith Gehrcke and cut the throats of both of them.

"The Court further finds that the People have proved beyond a reasonable doubt that the defendant, Ralph John Gilbert, caused the death of Jeane *[sic]* Verna Gehrcke, Mark Gehrcke and Keith Gehrcke without justification, excuse or mitigation.

"The Court finds beyond a reasonable doubt that the defendant, Ralph John Gilbert, consciously and knowingly intended to kill Jeane *[sic]* Verna Gehrcke and Mark Gehrcke and Keith Gehrcke and that the defendant did, in fact, kill them.

"The Court further finds as to Count I of the Information that the People have proved beyond a reasonable doubt that the murder of Jeane *[sic]* Verna Gehrcke was the wilful result of the Defendant Ralph John Gilbert's premeditated and deliberate intent to kill her.

"The Court further finds that the People have proved beyond a reasonable doubt that the Defendant Ralph John Gilbert thought out beforehand his intent to kill Jeane *[sic]* Verna Gehrcke and that he consciously reflected upon his decision to kill her before he did so.

"The Court further finds that the People have proved beyond a reasonable doubt that the defendant, Ralph John Gilbert, consciously thought about killing Jeane *[sic]* Verna Gehrcke, considered the manner in which he could affect her death, that is by shooting her, and cutting her throat and that he consciously decided over a sufficient period of time under the law that he would kill her.

"Therefore, as to Count I of the Information, the Court finds defendant, Ralph John Gilbert, guilty of first degree murder.

"The Court further finds as to Count II of the Information that the People have proved beyond a reasonable doubt that the murder of Mark Gehrcke was the wilful result of Defendant Ralph John Gilbert's premeditated and deliberate intent to kill him.

"The Court finds that the People have proved beyond a reasonable doubt that the defendant, Ralph John Gilbert, thought about beforehand his intent to kill Mark Gehrcke and that he consciously reflected upon his decision to kill him before he did so.

"The Court further finds that the People have proved beyond a reasonable doubt that the defendant, Ralph John Gilbert, consciously thought about killing Mark Gehrcke, considered the manner in which he would affect his death, that is by stabbing him and cutting his throat, and that he consciously decided over a sufficient period of time under the law that he would kill him.

"Therefore, as to Count II of the Information, the Court finds that the defendant, Ralph John Gilbert, is guilty of murder in the first degree.

"The Court further finds as to Count III of the Information that the People have proved beyond a reasonable doubt that the murder of Keith Gehrcke was the wilful result of Defendant Ralph John Gilbert's premeditated and deliberate intent to kill him.

"The Court further finds that the People have proved beyond a reasonable doubt that the defendant, Ralph John Gilbert, thought about beforehand his intent to kill Keith Gehrcke and that he consciously reflected upon his decision to kill him before he did so.

"The Court further finds that the People have proved beyond a reasonable doubt that the defendant, Ralph John Gilbert, consciously thought about killing Keith Gehrcke, considered the manner in which he would affect his death, that is by stabbing him and cutting his throat, and that he consciously decided over a sufficient period of time under the law that he would kill him.

"Therefore, as to Count III of the Information, the Court finds the defendant, Ralph John Gilbert, guilty of murder in the first degree."