611 A.2d 581

**David Andrew HARTLESS**

v.

**STATE of Maryland.**

**No. 116, Sept. Term, 1990.**

Court of Appeals of Maryland.

Aug. 26, 1992.

George M. Lipman, Asst. Public Defender and José Felipé Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and MARVIN H. SMITH, Judge of the Court of Appeals (Ret., Specially Assigned).

McAULIFFE, Judge.

On 17 October 1987, Angelica Valezco, a 20-year-old clerk at a High's Dairy store in Columbia, Maryland, was stabbed to death during a robbery of the store. Petitioner David Andrew Hartless was charged with the crime and tried by jury in the Circuit Court for Howard County. Hartless was found guilty of premeditated first degree murder, second degree murder, robbery, robbery with a dangerous and deadly weapon, assault, and battery. After merger of the lesser included offenses, Hartless was sentenced to life imprisonment for first degree premeditated murder and to a consecutive sentence of 20 years for robbery with a dangerous and deadly weapon. The Court of Special Appeals affirmed in an unreported opinion.

In his petition for writ of certiorari, Hartless alleged that the trial court committed two errors: 1) it violated his right against compelled self-incrimination and his right to due process of law by allowing the State to obtain mental examinations of him, and by releasing the results of those examinations to the State before he had introduced any psychiatric testimony in his defense, and 2) it erroneously excluded a defense expert's testimony concerning Hartless'

psychological profile and his *mens rea* at the time of the crime. We granted certiorari to decide these issues.

## I.

Early in the course of the proceedings, the State filed a "Request for Expert and Alibi Witnesses" pursuant to Maryland Rule 4–263 requesting, among other things, copies of all written reports made by experts that the defendant intended to call as witnesses. Thereafter, the defendant provided the State with a copy of a report of Dr. Ellen McDaniel, a psychiatrist, and informed the State that the defense intended to present expert psychiatric testimony that the defendant "had not formed the specific intent to kill." In response, the State filed a motion pursuant to Rule 4–263(d)(1), seeking a mental examination of the defendant by a psychiatrist and a psychologist. The defendant opposed the State's request for a mental examination, and alternatively sought a protective order limiting the State's access to results of the mental examination.

After a hearing on the motions, Judge Cornelius F. Sybert Jr. granted the State's motion for a mental examination. Judge Sybert also issued a protective order directing that the results of the examination be turned over to the court for *in camera* review, and that pending further order of the court, the State should not have access to oral or written reports of the results of the examination, nor contact with the examining experts. The court denied the defendant's request to have counsel present at, and to have a video recording made of, the examinations.

The defendant was thereafter examined by a psychiatrist and a psychologist selected by the State, and the results were provided only to Judge Sybert. When trial commenced before Judge J. Thomas Nissel and a jury, the State had had no contact with its experts or access to their findings. After six days of the State's case in chief and two days before the State rested, Judge Sybert ordered that the parties be given a summary of the findings by the State's

experts. After the State had rested, the State was given full access to the reports and to the experts. The court ordered, however, that the State could use information gained from its experts only in rebuttal and only if Hartless' psychiatric expert testified at trial for the defense. During the trial, Judge Nissel refused to admit the testimony and report of Dr. McDaniel when offered by the defense, and therefore the State never offered the testimony or reports of its experts.

The defendant argues that even though the results of the examination by the State's experts were not admitted at trial, the examination itself violated his right against self-incrimination, and the order to submit to an examination may have had a "chilling effect" on the defendant's right to testify, thus denying him due process of law. The defendant also claims that the examination gave the State insight into the defendant's ability to communicate with the jury, and an unfair opportunity to be made aware of the defendant's responses to questioning. We note, however, that the defendant does not specifically claim that his decision not to testify was influenced by being subjected to the State's mental examinations; nor does he point to any statements made during those examinations that could have given the State insight into his defense.

Hartless concedes that a compelled mental examination is not *per se* unconstitutional. He acknowledges it is well established that such an examination is permissible when a defendant enters a plea of not criminally responsible, and that, if he had entered such a plea, the State would have been entitled to a mental examination under § 12–110 of the Health–General Article, Maryland Code (1982, 1990 Repl. Vol.). Hartless recognizes that Rule 4–263 also authorizes mental examinations of defendants, but he asserts that the Rule is intended to be limited to cases involving pleas of not criminally responsible. Hartless concludes that since he sought only to present evidence of a lack of premeditation or of intent to commit murder, no examination was authorized under Maryland law.

The State responds that the examinations were properly ordered pursuant to Rule 4–263, and did not violate any of the defendant's constitutional rights. The State asserts that when a defendant intends to produce expert psychiatric testimony concerning his mental condition, the State must be allowed to conduct its own mental examination in order to effectively evaluate and rebut the defendant's psychiatric testimony. The State claims that its need for an examination is equally great, whether the defense is offering expert testimony to show insanity or to show a lack of *mens rea* or other mental state.

## II.

We begin our analysis by recognizing that, unlike § 12–110 of the Health–General Article, Maryland Rule 4–263 does not by its terms limit authorization of mental examinations of defendants only to cases in which a plea of not criminally responsible has been entered. Subsection (d)(1) of Rule 4–263 provides:

(d) **Discovery by the State.**—*Upon the request of the State, the defendant shall:*

(1) *As to the Person of the Defendant.*—Appear in a lineup for identification; speak for identification; be fingerprinted; pose for photographs not involving reenactment of a scene; try on articles of clothing; permit the taking of specimens of material under fingernails; permit the taking of samples of blood, hair, and other material involving no unreasonable intrusion upon the defendant's person; provide handwriting specimens; and *submit to reasonable physical or mental examinations;* ....

(Emphasis added).

To interpret the Rules, we use the same principles of construction as are used for interpreting statutes. *In re Leslie M.*, 305 Md. 477, 481, 505 A.2d 504 (1986); *Pappas v. Pappas*, 287 Md. 455, 465, 413 A.2d 549 (1980). We thus look to the plain meaning of Rule 4–263(d)(1) and construe its language without forced or subtle interpretations designed to limit its scope. *Baltimore Sun v. University*, 321

Md. 659, 669, 584 A.2d 683 (1991); *State v. Intercontinental, Ltd.*, 302 Md. 132, 137, 486 A.2d 174 (1985).

■ We find no authority, and Hartless points to none, to support his claim that Rule 4–263(d)(1) was not intended to apply to cases in which a defendant challenges with expert psychiatric testimony the existence of the *mens rea* element of a crime. The Rule is purposely drafted broadly to give a trial judge discretion to order any of these forms of discovery when the State has established them to be necessary and reasonable. Thus, unless there are constitutional prohibitions, Rule 4–263 gives a trial judge discretion to grant the State's request for a mental examination of a defendant who intends to offer expert psychiatric testimony to show the defendant's mental status.

We turn to Hartless' claim that the application of Rule 4–263 in this case violated his constitutional rights. In so doing, we must consider whether State-requested mental examinations of a defendant in a criminal case infringe upon a defendant's due process rights, or the right not to be compelled to give evidence against himself.

■ As mentioned, it is accepted that these rights are not violated by allowing the State a mental examination of a defendant who has entered a plea of not criminally responsible, and, if the defendant introduces psychiatric testimony at trial, by allowing the State to present testimony by its psychiatrist on the issue of criminal responsibility. *See United States v. Byers*, 740 F.2d 1104, 1111 (D.C.Cir.1984) and cases cited therein; *United States v. Albright*, 388 F.2d 719, 723–26 (4th Cir.1968); *Bremer v. State*, 18 Md.App. 291, 315–18, 307 A.2d 503, *cert. denied*, 269 Md. 755 (1973), *cert. denied*, 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974).

A number of different rationales have been advanced to support this rule. *See, e.g., United States v. Baird*, 414 F.2d 700, 707 (2d Cir.1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970) (defendant "estopped" from asserting rights when he voluntarily initiates inquiry into

his mental status); *Albright, supra,* 388 F.2d at 724 (examination of defendant maintains a "fair state-individual balance"); *Granviel v. Lynaugh,* 881 F.2d 185, 190 (5th Cir. 1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990) (raising insanity defense constitutes "waiver" of protection against compelled self-incrimination with regard to psychiatric testimony). We believe the underlying concern is that in order for the State to be able to bear effectively its burden of proving guilt, or of meeting an affirmative defense, it must have the means to adequately assess and, if necessary, rebut a defendant's expert psychiatric testimony.

The United States Supreme Court has addressed this concern and supported the concept that a defendant who uses psychiatric testimony as part of a mental status defense waives his right against compelled self-incrimination.

Language contained in [*Estelle v.*] *Smith,* [451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)] and in our later decision in *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), provides some support for the Fifth Circuit's discussion of waiver. In *Smith* we observed that "[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he has interjected into the case." 451 U.S., at 465, 101 S.Ct., at 1874. And in *Buchanan* the Court held that if a defendant requests a psychiatric examination in order to prove a mental-status defense, he waives the right to raise a Fifth Amendment challenge to the prosecution's use of evidence obtained through that examination to rebut the defense.

*Powell v. Texas,* 492 U.S. 680, 684, 109 S.Ct. 3146, 3149, 106 L.Ed.2d 551 (1989).

The Supreme Court stated that it would be unfair to the State to permit a defendant to use psychiatric testimony without allowing the State an effective means to rebut that testimony. *Id.* at 684–85, 109 S.Ct. at 3149–50. The Court

did not expressly define what means of rebuttal are constitutionally permissible.

Many state courts have, however, addressed this issue. Most have found no constitutional impediment to allowing the State to secure a mental examination of a defendant and to present rebuttal expert testimony in cases involving mental status defenses other than insanity. *See, e.g., State v. Druke,* 143 Ariz. 314, 693 P.2d 969, 972–73 (Ct.App.1984); *State v. Fair,* 197 Conn. 106, 496 A.2d 461, 463–64 (1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1494, 89 L.Ed.2d 895 (1986); *People v. Gilbert,* 101 Mich.App. 459, 300 N.W.2d 604, 608 (1981); *State v. Dixon,* 655 S.W.2d 547, 560 (Mo. App.1983), *cert. denied,* 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984); *State v. Goodwin,* 249 Mont. 1, 813 P.2d 953, 959 (1991); *State v. Briand,* 130 N.H. 650, 547 A.2d 235, 237–40 (1988); *State v. Myers,* 239 N.J.Super. 158, 570 A.2d 1260, 1266 (1990); *People v. Atwood,* 101 Misc.2d 291, 420 N.Y.S.2d 1002, 1005–06 (1979); *State v. Thompson,* 768 S.W.2d 239, 248 (Tenn.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1990); *Hernandez v. State,* 805 S.W.2d 409, 411–12 (Tex.Cr.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *State v. Hutchinson,* 111 Wash.2d 872, 766 P.2d 447, 451–53 (1989). *See also Ruiz v. State,* 299 Ark. 144, 772 S.W.2d 297, 307 (1989) (allowing the State to use a psychiatrist to testify on rebuttal as to the defendant's "future dangerousness").

In *State v. Druke,* for example, where the defendant sought to introduce expert psychiatric testimony to show a lack of *mens rea* to commit first degree murder, the court construed its discovery rule to permit a State mental examination and expert rebuttal testimony on the grounds that

a defendant is not entitled to an unfair advantage in the presentation of his defense and, conversely, ... the state is entitled to a fair opportunity to present its evidence and to rebut the evidence presented by the defendant.... In this case, if the [state] were denied the opportunity to have its own mental health expert examine [the defendant], it would have no means to rebut the testimony of

the latter's expert save through cross-examination.... [A]n inference would arise that the evidence presented by the [defendant] as to his mental condition is true because uncontradicted.

693 P.2d at 973.

The same right was afforded the prosecution in *State v. Hutchinson*, where the defendant sought to present expert testimony to establish his lack of mental capacity to form the intent to commit aggravated first degree murder. 766 P.2d at 451–53. The court held that the right of the State to request a mental examination was conferred by a discovery rule which, like Maryland Rule 4–263, generally allowed the court to order a defendant to submit to a reasonable physical or psychiatric examination. *Id.* The court emphasized that it would be unfair to allow the defendant to put his mental status in issue and then deny the State access to relevant information concerning it. *Id.* at 452.

This reasoning was also applied in *People v. Gilbert*, where the State was held to be entitled to a mental examination of a defendant who, like Hartless, sought to present expert psychiatric testimony that he did not have the specific intent required for premeditated first degree murder because of a panic reaction [1] during the commission of the crime. 300 N.W.2d at 608. The court held that if a defendant chooses to challenge with expert psychiatric testimony the intent element of a crime, the State is entitled to the same discovery rights as in the case of a defendant who pleads insanity. *Id.*

Federal Rule of Criminal Procedure 12.2 governs the notice a defendant must provide when intending to rely on an insanity defense or to present expert testimony concern-

---

1. At oral argument before this Court, defense counsel characterized Dr. McDaniel's full report as concluding in part that Hartless murdered Ms. Valezco due to a panic or rage reaction when his fantasized plan for the robbery went awry, and that this reaction is inconsistent with the *mens rea* required for murder, or at least for premeditated murder.

ing "any other mental condition of the defendant bearing on guilt."[2] A number of federal courts have interpreted the Federal Rules of Criminal Procedure to suggest that a compelled government examination is constitutional where the defendant has offered expert psychiatric testimony to show a lack of *mens rea*.

In *United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir.1986), the court applied the notice provisions of Rule 12.2(b) to exclude expert psychiatric testimony offered by a defendant who alleged that his depression made him unable to form the specific intent to commit wire fraud. The court's holding was based on the premise that the government would be unfairly prejudiced by the testimony, since it did not have time to conduct its own examination of the defendant and to prepare its own expert testimony for rebuttal:

> Obviously, the government cannot conduct its own investigation into the validity of the defense of lack of mental capacity and decide if it will present expert witnesses in rebuttal until such time as it has knowledge of the psychiatric and psychological evidence the defense intends to present.... It is evident that the government did not have sufficient time prior to trial to have the defendant examined by its own expert witnesses and to prepare psychiatric testimony of its own concerning the defendant's condition to rebut the defense expert's testimony if necessary.

*Id.*

In *United States v. Halbert*, 712 F.2d 388, 390 (9th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984), the court found no constitutional violation in the admission of evidence derived from a court-ordered psychiatric examination of the defendant. After

---

2. Like Maryland Rule 4–263, the federal rule does not define when a defendant may be ordered to submit to a government examination, stating only that it is available "[i]n an appropriate case." Fed. R.Crim.P. 12.2(c).

raising a defense of diminished capacity, the defendant argued that if he were required to submit to a mental examination, only statements concerning sanity should be admissible under the Fifth Amendment and not those bearing on his *mens rea.* Stating that this distinction "elevates form over substance," the court held that both forms of evidence are constitutionally admissible once a defendant raises a mental status defense. *Id.*[3]

Thus, there is substantial authority supporting the position that the State constitutionally may be permitted to have access to evidence on an issue the defendant has introduced and that, for rebuttal purposes, "the state must be able to follow where [the defendant] has led." *United States v. Byers, supra,* 740 F.2d at 1113. We have, in fact, found only two courts which have held that the prosecution may not conduct a mental examination of a defendant who asserts a mental status defense other than insanity.

First, in *State v. Hennum,* 441 N.W.2d 793 (Minn.1989), the court granted a new trial to a defendant who had been ordered to submit to a state mental examination based upon her intent to present expert testimony concerning the battered woman syndrome as part of a self-defense claim to murder. In reaching its decision, however, the court did not directly address the constitutional issues involved, stating that questions as to the nature and scope of adverse medical examinations were best answered by the legislature. *Id.* at 800. The court decided that until the legislature spoke on this issue, expert testimony concerning whether the defendant suffered from the syndrome could not be adduced by *either* side. *Id.* at 799–800. The court acknowledged that allowing a defendant to admit such expert testimony would require reciprocal rights for the State:

---

**3.** *See also United States v. Staggs,* 553 F.2d 1073, 1077 (7th Cir.1977) (prosecution entitled to have its own expert conduct an examination of the defendant and rebut the defendant's expert testimony that he lacked the intent to assault a federal officer).

> [Our] restriction will remove the need for a compelled adverse medical examination of the defendant. Since the expert will only be allowed to testify as to the general nature of the battered woman syndrome, neither side need conduct an examination of the defendant.
>
> * * * * * *
>
> [W]e also note that allowing the defense to produce expert testimony based on a medical examination of a defendant without providing the state an opportunity to conduct a similar examination denies the state a fair chance to rebut the expert testimony of the defense.

*Id.*[4]

Second, in *State v. Vosler,* 216 Neb. 461, 345 N.W.2d 806, 811–13 (1984), a divided court held that the defendant's right against compelled self-incrimination had been violated by permitting the State to conduct a mental examination of the defendant and to rebut his expert testimony that he did not have the intent to commit murder. The defendant alleged that he had killed his wife's paramour based on an "irresistible impulse" after finding the two in each other's arms. *Id.,* 345 N.W.2d at 808.

> The majority reached its result by reasoning that
>
> [d]efendant's use of evidence of his mental condition to rebut the charge that he acted with premeditation and malice was aimed squarely at an element of the crime which the State had the burden to prove; that is, whether the defendant had the intent required to commit murder.
>
> * * * * * *
>
> In such a situation the fifth amendment requires that the State prove its case without compelling the defendant to submit to interviews by those in its employ.

---

**4.** For states that have allowed both parties to present expert testimony on whether the defendant suffers from the battered woman syndrome and have found a compelled State mental examination to be constitutional, see *State v. Briand,* 130 N.H. 650, 547 A.2d 235, 237–40 (1988); *State v. Myers,* 239 N.J.Super. 158, 570 A.2d 1260, 1266 (1990).

*Id.* at 812–13.[5] The dissenting judges strongly disagreed, arguing instead that

> [t]he reasons which support the right of the State to compel such an examination where the defendant pleads insanity are equally applicable in any case where psychiatric evidence may be offered by the defendant.
>
> ... [F]undamental fairness should prevent a defendant who uses such psychiatric testimony in his defense from denying the State an opportunity to meet and rebut that evidence.

*Id.* at 814.

We have carefully considered and weighed the important constitutional interests which all of these cases raise. Clearly a balance must be struck that protects a defendant's right against compelled self-incrimination and his right to due process of law while, at the same time, adequately assuring that the State will not be unfairly disadvantaged in bearing its burden of proof.

Under the facts of this case, we hold that Judge Sybert did not abuse his discretion in granting the State's request for a mental examination. The defendant had given notice of his intention to offer expert testimony concerning his mental state, and the State was entitled to have a reasonable opportunity to properly evaluate and meet that evidence. We also agree that ordinarily it would not be feasible to delay the mental examination until after the defendant had offered expert testimony on his mental state. Not only would this be difficult, if not impossible to accomplish without inordinately delaying the trial, it would also preclude the State from having information necessary to effectively cross-examine the defendant's expert. Although the State may argue that the precautions taken by Judge

---

5. The court's holding was based in part on the fact that the only express authority for State mental examinations under Nebraska law was a statute which was strictly limited by its terms to cases involving a pure insanity defense and could not, unlike Maryland Rule 4–263, be applied to situations where a defendant put his mental condition in issue for some other purpose. *Id.* at 811–12.

Sybert in this case were more far-reaching than required, we are persuaded that they were certainly adequate to safeguard the defendant's rights.

Hartless points to no instance where the State either improperly used or benefitted from having received the results of its examinations before Hartless sought to introduce his expert psychiatric testimony. Indeed, such an instance would be difficult to imagine since the State did not receive the results of the examinations until the conclusion of its case in chief, and at no time sought to admit its psychiatric evidence. We find no error in the lower court's handling of this issue.

## III.

Hartless' second claim of error is that the trial court erroneously excluded the testimony of Dr. McDaniel. From the outset it was clear that the defendant sought to introduce Dr. McDaniel's opinion with respect to the defendant's state of mind at the time of the offense. It is not clear whether the defendant sought to show that he never harbored an intent to kill or to inflict grievous bodily harm, or rather sought to show that he did not plan in advance to kill the victim, *i.e.*, that the killing was not deliberate and premeditated.[6]

---

6. At various times defense counsel suggested that the only purpose of the proffered psychiatric testimony was to show an absence of premeditation. Defense counsel virtually conceded that the evidence demonstrated the defendant was guilty of first degree murder because the murder occurred during the perpetration of a robbery, but disputed the presence of premeditation. Under ordinary circumstances, the legal effect of avoiding a finding of premeditated first degree murder under these circumstances would be to preclude the possibility of the defendant being given a separate sentence for the felony relied upon by the State to establish felony murder. *State v. Frye*, 283 Md. 709, 393 A.2d 1372 (1978).

As it turned out in this case, the consequences of avoiding a finding of premeditated murder might have been greater, because of an erroneously drawn verdict sheet. On the verdict sheet used in this case, the jury was first asked to determine whether the defendant was

■ In her report, Dr. McDaniel reached the following conclusion:

> With a reasonable degree of medical certainty, it is my opinion that David Hartless did not intend to murder the victim but panicked when the robbery did not proceed in the way David had fantasized. In his panic to stop the victim's screaming and get out of the situation, he repetitively stabbed her. There was no thought, plan or intention to murder the victim.

Whichever the defendant's purpose, the opinion of Dr. McDaniel concerning the defendant's actual intent at the time of the offense was properly excluded. As this Court made clear in *Simmons v. State*, 313 Md. 33, 48, 542 A.2d 1258 (1988), and in *Johnson v. State*, 303 Md. 487, 515, 495 A.2d 1 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986), psychiatrists have not been shown to have the ability to precisely reconstruct the emotions of a person at a specific time, and thus ordinarily are not competent to express an opinion as to the belief or intent which a person in fact harbored at a particular time. *See also Globe Security Systems v. Sterling*, 79 Md.App. 303, 307–08, 556 A.2d 731 (1989).

---

guilty of murder in the first degree. The jury found that he was. The verdict sheet then provided:

> If you find the Defendant guilty of murder in the First Degree, do you find the Defendant guilty of
>
> a). Premeditated First Degree Murder _____
>
> or
>
> b). Felony Murder _____
>
> Please indicate which.

The jury entered a check mark only opposite the finding of premeditated first degree murder. A correctly drawn verdict sheet would have permitted the jury to indicate that a finding of first degree murder was based on either premeditated murder or felony murder, *or on both.*

As a result of the form of this verdict, the defendant argues that the jury has found the defendant not guilty of felony murder, thus precluding the State from proceeding on that theory of first degree murder if a reversal were granted and a new trial awarded. Our holding in this case obviates the necessity of considering this argument, but we point out the error to guard against a similar problem in the future.

■ When it became apparent that the trial judge would not permit Dr. McDaniel to express an opinion concerning the defendant's intent at the time of the killing, the defendant advanced the alternative argument that the psychiatrist should be allowed to testify concerning the defendant's psychological profile. Hartless argued that this type of testimony was clearly admissible under our decision in *Simmons v. State, supra.*

In *Simmons,* we held that the trial judge erred in concluding that psychological profile testimony was not admissible as a matter of law. We explained that where the evidence properly generated a question of imperfect self-defense, thus placing in issue the defendant's subjective belief concerning the necessity of employing force to prevent immediate death or serious bodily harm, the trial judge had broad discretion to admit otherwise competent evidence of the defendant's psychological profile and the opinion of a psychiatrist that the asserted subjective belief of the defendant was consistent with that profile. We said:

> [T]he proffered testimony has some relevance in that consistency between the specific subjective belief testified to by Simmons and Simmons's psychological profile tends to make it more likely that Simmons in fact held that subjective belief. Had the trial judge appreciated that the second proffer [did not include opinion testimony purporting to reconstruct the defendant's actual subjective belief], the judge might well have exercised his discretion to admit the evidence. *See [State v.] Allewalt,* 308 Md. [89] at 109, 517 A.2d [741] at 751 [1986]. Here the judge did not purport to exclude the evidence by the exercise of discretion so that no issue of discretion is before us. The judge erroneously ruled, as a matter of law, that the evidence could not, under any circumstances, be admitted.

*Id.,* 313 Md. at 48, 542 A.2d 1258.

In contrast to *Simmons,* the trial judge in Hartless' case did not rule that as a matter of law Dr. McDaniel's testimony was inadmissible. The record reflects that the judge

specifically acknowledged that Dr. McDaniel was "entitled to present a psychological profile if she gives a legitimate conclusion resulting therefrom." He exercised his discretion to exclude the evidence after he determined that the psychological profile was inadmissible because it lacked an adequate factual basis and because it bore no relevance to a material issue in the case.

Before reaching his decision on this issue, the judge questioned and heard arguments from both the defense and the State. The court first attempted to determine what the defendant intended to introduce as a psychological profile.[7] The court noted that for the profile to be admissible, it must ordinarily have significance beyond a simple recitation of the defendant's background. Otherwise, the court said, the profile is "a non sequitur as to the issues in this case." The defense then offered that the profile would include:

> [t]hat the defendant was under a tremendous amount of stress from his father and the background of the defendant in relating to that; and then let that go to the jury in terms of determining whether there was sufficient *mens rea.*

The court responded that this was not adequate, that something more had to be proffered in order to establish why the profile was relevant to Hartless' defense that he did not intend to commit murder, or that the murder was not deliberate and premeditated.

Here the defense and the court disagreed, as shown by their continuing discussion:

> DEFENSE COUNSEL: ... What we're saying is here we have the right to show that a particular mental element of a crime did not exist. If we put on Dr. McDaniel to testify as to what a psychological profile was, what his

---

7. Dr. McDaniel's report did not define the psychological profile of the defendant. Under the section marked "Psychological profile of David Hartless" is written only "See report." The report, however, does not mention a profile, nor does it indicate which sections might constitute such a profile.

state of mind was, what stress was there, what other matters were brought to bear on him, they're subject not only to my direct examination but to the State's cross-examination.... She's also subject to the State's rebuttal witnesses.

THE COURT: What would be the conclusion of the doctor?

DEFENSE COUNSEL: Your Honor, the conclusion is the psychological profile.

THE COURT: What would be the conclusion? The conclusion is that he has a psychological profile—so does everyone.

DEFENSE COUNSEL: And that's a factor to be taken into determination by the ...

THE COURT: For what purpose, Mr. Kraft?

DEFENSE COUNSEL: To determine whether he had the sufficient *mens rea* to create the intent. It's all done by inference, Your Honor.

The court and the parties continued to discuss this issue, with the court insisting that in order for the psychological profile to be admissible it must have more relevance than merely "narrating the social history of the defendant." After nothing further was offered by the defense, the court declined to admit Dr. McDaniel's testimony relating to Hartless' psychological profile.

A trial court is given broad discretion in ruling on the admissibility of expert testimony, and the court's decision in admitting or excluding such testimony will seldom be reversed. *Johnson v. State*, 303 Md. 487, 515, 495 A.2d 1 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Stebbing v. State*, 299 Md. 331, 350, 473 A.2d 903, *cert. denied*, 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984). Reversal is warranted only if founded on an error of law or some serious mistake, or if the trial court has seriously abused its discretion. *Stebbing*, 299 Md. at 350, 473 A.2d 903; *Raithel v. State*, 280 Md. 291, 301, 372 A.2d 1069 (1977); *Radman v. Harold*, 279 Md. 167, 173, 367 A.2d 472 (1977).

We hold that the exclusion of Dr. McDaniel's psychological profile testimony did not amount to a clear abuse of discretion by the trial court. The record reflects that the court did not believe the psychological profile testimony was relevant to any issues in the case or to any defense generated by the defendant, or would be of appreciable help to the jury. This holding does not appear to be clearly in error, and we disagree with Hartless that it is inconsistent with our decision in *Simmons*. As already mentioned, in *Simmons* we found the psychological profile testimony to have relevance because the defense had proffered that the testimony would come after the defendant had first testified to his mental state at the time of the crime, and the profile testimony would support the imperfect self-defense claim proffered by the defendant:

> [T]he proffered testimony has some relevance in that consistency between the specific subjective belief testified to by Simmons and Simmons's psychological profile tends to make it more likely that Simmons in fact held that subjective belief.

*Simmons, supra,* 313 Md. at 48, 542 A.2d 1258.

In Hartless' case, the psychological testimony, standing alone, had little or no rational nexus to the issues of premeditation and intent. It is thus unclear how a jury could have found the profile helpful in determining those issues.

The absence of a nexus between a psychological profile of the defendant that Dr. McDaniel might have been able to relate and the issues before the jury resulted, at least in part, from the absence of an adequate evidentiary foundation. As the trial judge noted, the defendant failed to produce admissible evidence of some facts that Dr. McDaniel wished to rely on in determining the defendant's psychological background, and failed to produce evidence of particular facts relating to the occurrence of the criminal event, *i.e.,* the defendant's version of what happened, that were essential, not only to the formation of the expert's opinion but to the relevance of that opinion to the issues in the case.

Although the defendant complains bitterly of the trial judge's refusal to admit the defendant's exculpatory statement to the police, a letter written by a third party, and certain out-of-court statements made by others, he offers no suggestion of exceptions to the hearsay rule under which any of this evidence might have been admissible. Rather, the defendant simply says he needed the evidence to establish parts of his psychological profile, and it was therefore improper to exclude it. This argument is patently without merit.

█ Alternatively, the defendant suggests that Dr. McDaniel received a great many facts concerning the defendant's past, and concerning precisely how the incident occurred, from her interviews with the defendant and with others who knew the defendant. He contends that "it is axiomatic that a forensic psychiatrist may rely on data of this type," citing as authority *Beahm v. Shortall,* 279 Md. 321, 368 A.2d 1005 (1977), and *Consol. Mech. Contractors v. Ball,* 263 Md. 328, 283 A.2d 154 (1971). In *Beahm v. Shortall* we held that a non-treating physician testifying as an expert for the plaintiff could relate the history given by the plaintiff, not as substantive evidence, but as an explanation of the basis of the physician's opinion. *Id.,* 279 Md. at 327, 368 A.2d 1005. *See also Booth v. State,* 327 Md. 142, 190, 608 A.2d 162 (1992). Similarly, in *Consol. Mech. Contractors v. Ball* we held that an expert could properly base his opinion upon facts contained in reports made by third parties where it was shown that such reports are relied on by experts in the practice of that profession. *Id.,* 263 Md. at 336, 283 A.2d 154. The defendant argues that psychiatrists routinely rely upon what they are told by others, and therefore Dr. McDaniel should be able to conduct an investigation by talking to people who have relevant information, and then telling the jury what those people said and the psychological import of that information.

We said, in *State Department of Health v. Walker,* 238 Md. 512, 520, 209 A.2d 555 (1965), that

[t]he opinion of an expert ... must be based on facts, proved or assumed, sufficient to form a basis for an opinion, and cannot be invoked to supply the substantial facts necessary to support such conclusion. The facts upon which an expert bases his opinion must permit reasonably accurate conclusions as distinguished from mere conjecture or guess.

Implicit in the rule of *Consol. Mech. Contractors v. Ball,* permitting an expert to base an opinion in part upon facts not in evidence but of a type customarily relied upon by experts in the field, is the concept that the reliance must be reasonable. The cases relied on by the Court in *Ball* and the rationale of the rule compel this conclusion. The variety of disciplines currently spawning experts, and the diverse methodologies employed by these experts, including some that may have been constructed solely with forensic application in mind, require judicial consideration of the reasonableness of reliance to ensure, as far as is possible, that the basic concept of reliability of the fact or facts in issue is not overlooked. Otherwise, a party might "employ an expert witness to place untrustworthy facts, data, or opinions before the jury." *McCormick on Evidence* § 15, at 65–66 (4th ed. 1992).

As the authors of *McCormick* point out, there are any number of examples of hearsay statements "insufficiently trustworthy to be 'reasonably' relied upon even if experts in the field customarily rely on such statements." *Id.* at 66 n. 9. Similarly, the Advisory Committee, in a note to Fed. R.Evid. 703, explains that the opinion of an "accidentologist" as to the point of impact in an automobile collision based on statements of bystanders would not satisfy the requirement of the rule that the facts be of a type reasonably relied on by experts in the particular field. Under this rationale, the court in *Dallas & Mavis Forwarding Company, Inc. v. Stegall,* 659 F.2d 721, 722 (6th Cir.1981), upheld the exclusion of expert testimony by a state trooper concerning the cause of an automobile accident, stating:

We agree with the district court that under [Fed.R.Evid. 703] the opinion of the trooper was not admissible, because it was based on no physical evidence (none existed) and was derived primarily from the story of a biased eyewitness. This is the sort of hearsay testimony whose admission the Rule was meant to foreclose. The trial process is better served when a biased eyewitness declarant is required to testify directly and to be subject to cross-examination. To permit his opinion to be heard through the testimony of an official would cloak it with undeserved authority that could unduly sway a jury.

The trial judge also held that the psychological profile testimony offered by the defendant was inadmissible because the proffered facts were not relevant to the issue upon which they were offered. The defendant sought to show that he had come under the influence of his stepfather, who was in jail, and that he planned and executed the robbery at his stepfather's urging. The trial judge inquired whether an expert would offer an opinion based on that "profile," and how those facts might be relevant to the question of the defendant's intent to kill. Defense counsel said that the psychiatrist would not offer an opinion on the psychological profile (other than the previously noted opinion that the defendant did not in fact intend to kill the victim), and that the evidence had some circumstantial value not otherwise explained. The trial judge found no sufficient link between the proffered evidence and the fact sought to be established and we concur.

Finally, the trial judge held that even if the psychiatrist were permitted to testify concerning the hearsay evidence she had received from others, with a limiting instruction to the jury that such evidence was not received for the truth of the matter stated therein but only to explain the basis for the expert's opinion, the evidence would not be relevant because the opinion would pertain to a factual scenario that was not in evidence. The Court of Special Appeals correctly described as a "circular" or "bootstrapping" argument the defendant's attempt to create an entire scenario of what

took place at the time of the murder by evidence not admissible for any reason other than to explain an opinion which was based upon that scenario. If the evidence is inadmissible for substantive purposes, it cannot be used to create the foundation of basic facts upon which the opinion necessarily turns.

The Court of Special Appeals confronted a similar type of argument in *Waltermeyer v. State*, 60 Md.App. 69, 480 A.2d 831, *cert. denied*, 302 Md. 8, 485 A.2d 249 (1984), where the defendant sought to include, as a predicate for the opinion of an expert, evidence of greater ingestion of intoxicating substances than was shown by the substantive evidence. Judge Wilner, speaking for the court, said:

> In deciding whether appellant was so inebriated as to possess no reason or understanding, and thus was incapable of forming the requisite specific intent, the jury could consider only what the evidence showed. It was properly so instructed. It could not, as a matter of law, be permitted to speculate that appellant had ingested anything else, or anything more.
>
> Of what value, then, was an opinion on the ultimate issue based on the assumption that appellant had indeed ingested other substances, or a greater quantity of substance? What use could the jury properly make of such an opinion? The answer to both questions is "none." Such an opinion would have been completely irrelevant; it could have no function other than to confuse or mislead the jury. *That* is why it was inadmissible.

*Id.*, 60 Md.App. at 80, 480 A.2d 831 (emphasis in original).

We hold that the psychiatric testimony proffered by the defendant was properly rejected.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.