*David Andrew Hartless v. State of Maryland*, No. 123, Sept. Term 2017.  Opinion filed on May 30, 2019, by Berger, J.


CRIMINAL PROCEDURE - CONSTITUTIONAL LAW - SENTENCING - PAROLE - JUVENILE OFFENDERS - LIFE SENTENCES

The Eighth Amendment to the United States Constitution requires that, before being sentenced to life without parole, a juvenile homicide offender receive an individualized sentencing process that expressly considers the juvenile's youth and attendant circumstances.  There is no such individualized sentencing requirement expressly considering a juvenile's youth and attendant circumstances for juvenile homicide offenders who receive sentencing other than life without parole.

CRIMINAL PROCEDURE - CONSTITUTIONAL LAW - SENTENCING - PAROLE - JUVENILE OFFENDERS - LIFE SENTENCES - EXECUTIVE CLEMENCY

The Parole Commission's authority to make and review recommendations concerning a pardon, commutation of sentence, or other clemency does not constitute the authority to divert a parole request into a request for executive clemency.  The laws and regulations governing executive clemency in Maryland do not render a juvenile homicide offender's sentence of life with parole unconstitutional.

Circuit Court for Howard County
Case No. 13-K-87-017022

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 123

September Term, 2017

_____

DAVID ANDREW HARTLESS

v.

STATE OF MARYLAND

_____

Berger,
Arthur,
Beachley,

JJ.

_____

Opinion by Berger, J.

_____

Filed: May 30, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case is before us on appeal from an order of the circuit court denying the motion to correct an illegal sentence filed by David Andrew Hartless, appellant. In 1989, Hartless was convicted of premeditated first-degree murder, robbery with a deadly weapon, and lesser-included offenses. He was sentenced to life in prison for first-degree murder and twenty years' imprisonment for robbery with a deadly weapon. His convictions were affirmed on direct appeal. *Hartless v. State*, 327 Md. 558, 560 (1992). Hartless was seventeen years old when he committed the crimes.

Following the decisions of the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016), Hartless filed a motion to correct what he alleged to be an illegal sentence. Hartless asserted that his sentence was unconstitutional pursuant to recent Supreme Court precedent addressing life sentences without parole for juvenile homicide offenders. The circuit court denied Hartless' motion.

Hartless noted a timely appeal. This Court stayed Hartless' appeal pending the decision of the Court of Appeals in *Carter v. State*, No. 54, Sept. Term, 2017; *Bowie v. State*, No. 55, Sept. Term 2017; and *McCullough v. State*, No. 56, Sept. Term, 2017, because the cases raised issues relating to whether a life sentence with the possibility of parole or a lengthy term of years sentence constituted an unconstitutional *de facto* life without parole sentence. On August 29, 2018, the Court of Appeals issued an opinion in *Carter v. State*, 461 Md. 295 (2018), *reconsideration denied*, October 4, 2018. The Court's consolidated opinion resolved the cases of *Carter*, *Bowie*, and *McCullough*. Following the

issuance of the *Carter* opinion, we lifted the stay in Hartless' appeal and the appeal proceeded.

In this appeal, Hartless presents three issues for our consideration, which we set forth verbatim:

1. What is the scope of *Carter's* requirement that all juvenile offenders are entitled to an individualized sentencing hearing that takes into account the offender's youth, and based on *Carter's* interpretation of this requirement, did the circuit court err in determining that Mr. Hartless' life plus twenty year sentence, imposed without an individualized sentencing, was legal?

2. Presenting an issue that was not ruled upon in *Carter*, did the circuit court err in not finding Mr. Hartless' life sentence illegal since the statutes and regulations governing the Maryland parole system authorize the Parole Commission to divert any parole application to a request for executive clemency?

3. An argument raised for preservation purposes, is the Court of Appeals' decision in *Carter* in contravention with Supreme Court precedent in *Miller* and *Montgomery*, which held that a non-incorrigible juvenile offender has a substantive right to release upon a showing of demonstrated maturity and rehabilitation?

With respect to the first issue raised by Hartless, for reasons we shall explain, we reject Hartless' premise that *Carter* requires an individualized sentencing hearing that takes into account the offender's youth for all juvenile homicide offenders. We shall further hold that the availability of executive clemency as an alternative to parole does not render Hartless' sentence unconstitutional. For reasons we shall explain, we do not address the merits of the third issue. We shall affirm.

2

## BACKGROUND

We set forth briefly the factual background underlying this appeal. The underlying murder occurred in 1987 when Hartless was seventeen years old. Hartless entered a convenience store in Columbia, Maryland, intending to rob the store. A twenty-year-old store clerk, Angelica Velazco, was alone in the store at the time. Hartless ordered Velazco to lie on the floor. Velazco complied, but Hartless smashed a bottle over her head and subsequently stabbed her to death.

The State sought a sentence of life without the possibility of parole for Velazco's murder, but the trial court ruled that it was not an allowable sentence at the time of Hartless' crime. The circuit court subsequently sentenced Hartless to life imprisonment for murder. Defense counsel acknowledged that the court was obligated to impose a life sentence for the murder conviction but asked the court to issue a concurrent sentence for the robbery. Defense counsel specifically pointed to Hartless' age at the time of the offense, Hartless' difficult childhood circumstances, and the corrosive influence of Hartless' stepfather, Leo Rites. Defense counsel also asked for Hartless to be sent to the Patuxent Institution where he would be able to receive psychiatric care and treatment.

The circuit court imposed the mandatory life sentence for the first-degree murder conviction and a consecutive twenty-year term of imprisonment for robbery with a deadly weapon. The court noted Hartless' age at the time the crime was committed but emphasized that Hartless had committed the "ultimate crime" in a "rather vicious" manner and emphasized that the victim was "rather young." The circuit court expressly

3

commented that it was "fully cognizant of the various psychological and psychiatric reports."

On January 23, 2017, Hartless filed the motion to correct illegal sentence pursuant to Maryland Rule 4-345(a) that ultimately gave rise to this appeal. He argued that his sentence was illegal based upon the United States Supreme Court cases of *Miller*, *supra*, 567 U.S. 460, and *Montgomery*, *supra*, 136 S. Ct. 718. We shall discuss these cases in further detail *infra*, but it is helpful to set forth the holdings of each case here in order to provide context for Hartless' motion. In *Miller*, the Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465.

The *Montgomery* Court held that *Miller* announced a new substantive rule that applies retroactively to convictions that were final prior to the *Miller* decision. 136 S. Ct. at 736. The *Montgomery* Court explained that *Miller* "requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." *Id.* at 734. The Court further explained that *Miller* "determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" *Id.* (quoting *Miller*, 567 U.S. at 479-80).[1]

---

[1] Courts have reached different conclusions on the issue of whether *Montgomery* made *Miller* retroactive to all cases involving juveniles sentenced to life without parole or only to cases involving juveniles sentenced to life without parole pursuant to a mandatory sentencing scheme. The United States Supreme Court has granted certiorari to address this issue. *Malvo v. Mathena*, 893 F.3d 265 (4th Cir. 2018), *cert. granted*, ___ S. Ct. ___ (U.S. Mar. 18, 2019).

Against this backdrop, Hartless filed a motion to correct what he alleged to be an illegal sentence, arguing that his sentence was unconstitutional as a *de facto* sentence of life without parole. Hartless asserted that a sentence of life with parole is effectively equivalent to life without parole in Maryland because there is no "meaningful opportunity to obtain release" for individuals sentenced to life with parole. Hartless contended that the circuit court had not considered the factors set forth in *Miller*, *supra*, before sentencing him to what was effectively a sentence of life without parole, and, therefore, the circuit court's sentence was illegal.

The circuit court, in a written order, observed that there was "not yet precedent" on the constitutionality of Hartless' life sentence with parole. The circuit court observed that Hartless had an upcoming parole hearing and had "not yet been denied parole." The court found Hartless' motion to be "premature" and denied the motion without prejudice.

Hartless noted a timely appeal to this Court. The appeal was stayed pending the Court of Appeals' decision in *Carter*, *Bowie*, and *McCullough*, *supra*, which presented the same theory underlying Hartless' motion and argued that a life sentence in Maryland "is effectively . . . life without parole, because the laws governing parole in Maryland do not provide [an inmate] with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Carter*, *supra*, 461 Md. at 307. The Court of Appeals rejected this theory, holding in *Carter* that the petitioners' life sentences were legal because "the laws governing parole of inmates serving life sentences in Maryland, including the parole statute, regulations, and a recent executive order adopted by the Governor, on their face

5

allow a juvenile offender serving a life sentence a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Id.*[2]

## DISCUSSION

We first address which of the appellate issues raised by Hartless are properly before this Court and which issues are unpreserved or otherwise not appropriate for this Court to address. The primary argument raised by Hartless before the circuit court is the same argument expressly rejected by the Court of Appeals in *Carter*: that a life sentence in Maryland is effectively a sentence of life without parole because the laws governing parole in Maryland do not provide a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Therefore, Hartless contended before the circuit court, such a sentence is unconstitutional for juvenile offenders pursuant to *Miller*, *supra*, 567 U.S. 460, and *Montgomery*, *supra*, 136 S. Ct. 718. Before this Court, Hartless raises three additional issues. First, Hartless argues that *Carter* mandates an "individualized sentencing process that takes account of the offender's youth" for *all* juvenile homicide

_____

[2] The Court explained that its holding was based upon the laws governing parole decision-making and not based upon how the laws have been carried out. *Carter*, *supra*, 461 Md. at 337 ("To the extent that [the Petitioners] are challenging the actual practice of the Parole Commission and the Governor in making parole decisions, their claims are outside the scope of a motion to correct an illegal sentence. We thus agree with the Court of Special Appeals that whether the Parole Commission and others involved in the parole system are carrying out their duties in practice is not at issue in this appeal.") (footnote omitted). The Court observed that "other causes of action are more appropriate to litigate claims that the Parole Commission and others involved in the parole system are not carrying out their responsibilities." *Id.* The Court further commented that several of these claims are currently being litigated in the United States District Court for the District of Maryland in a lawsuit brought pursuant to 42 U.S.C. § 1983. *Id.* at 337 n.26; *see also Maryland Restorative Justice Initiative et al. v. Hogan et al.*, No. 16–01021–ELH (D.Md.).

6

offenders regardless of whether they are sentenced to life without parole. This issue, albeit framed quite differently, was presented before the circuit court, and we shall address it.[3]

Hartless' second argument is that his sentence is illegal because the Parole Commission is empowered to "turn any application for parole into a request for executive clemency." This issue was not raised before the trial court, and ordinarily, we would not address issues that were not raised in or decided by the trial court.[4] *See* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any [non-jurisdictional] issue unless it plainly appears by the record to have been raised in or decided by the trial court."). We recognize, however, that a motion to correct an illegal sentence can be filed at any time and is not subject to the ordinary preservation rules. *See* Md. Rule 4-345(a) ("The court may correct an illegal sentence at any time."); *Carlini v. State*, 215 Md. App. 415, 426 (explaining that for Rule 4-345(a) purposes, the illegality must actually inhere in the

---

[3] Before the circuit court, Hartless asserted that an individualized sentencing process that takes account of the offender's youth was necessary because a life sentence with the possibility of parole was effectively a life sentence without the possibility of parole in Maryland. As we have explained, the *Carter* Court rejected the argument that a life sentence with the possibility of parole is effectively a life sentence without parole. Nonetheless, because Hartless raised the issue of whether he had been impermissibly deprived of a right to an individualized sentencing process below, we address the merits of this issue on appeal.

[4] Hartless asserts that this argument was "partially presented" in the *Carter* briefing but not ruled upon. The Court of Appeals briefly touched upon the laws regarding executive clemency in its discussion of the various laws governing parole of inmates serving life sentences in Maryland, observing that "[d]istinct from the Governor's role in the parole of inmates serving life sentences, the Maryland Constitution confers the independent power of executive clemency on the Governor." *Carter*, *supra*, 461 Md. at 325.

7

sentence itself). Accordingly, we shall address Hartless' second argument regardless of the fact that it was not raised or addressed below.

Hartless' third appellate argument -- which Hartless concedes is raised "for preservation purposes" -- asserts that *Carter* is inconsistent with Supreme Court precedent and should be reconsidered. This Court, of course, is bound by the Court of Appeals' decision in *Carter* and we will not revisit this issue.

We, therefore, turn to the merits of the issues before us, namely, whether the circuit court erred by denying Hartless' motion to correct illegal sentence on the basis that he was required to receive an individualized sentencing process and whether the availability of executive clemency renders the parole system unconstitutional. We review the circuit court's denial of a motion to correct illegal sentence *de novo*. *Rainey v. State*, 236 Md. App. 368, 374 (2018).

## I.

Hartless' first appellate contention is that his sentence should be vacated because he did not receive an individualized sentencing process at which the circuit court expressly considered his youth and attendant circumstances. Hartless asserts that *Carter* requires that any juvenile convicted of homicide receive an individualized sentencing process at which six factors are considered *regardless* of whether the court is considering a sentence of life imprisonment without the possibility of parole. Specifically, Hartless asserts that a court must evaluate (1) the defendant's chronological age and immaturity, impetuosity, and the failure to appreciate risks and consequences; (2) the defendant's family and home environment; (3) circumstances of the offense, including the extent of the defendant's

8

participation in the criminal conduct; (4) the impact of familial and peer pressures on the defendant; (5) the effect of the defendant's youth on the criminal justice process, such as his inability to comprehend a plea bargain; and (6) the possibility of a defendant's rehabilitation. These factors are drawn from *Miller*, *supra*, 567 U.S. at 477-78.[5]

A brief discussion of the United States Supreme Court caselaw on issues relating to life sentences for juvenile offenders is necessary in order to provide the proper context for our discussion of *Carter*. In *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court held that the Eighth Amendment bars a sentence of life in prison without parole for juvenile offenders convicted of only non-homicide offenses. The Supreme Court first addressed the issue of under what circumstances a juvenile homicide offender may be sentenced to life in prison without the possibility of parole in *Miller*, *supra*. The *Miller* Court held that "the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479 (emphasis added). The Court did not prohibit life sentences without parole categorically, but commented that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* The Supreme Court did "not foreclose a sentencer's ability to make that judgment in homicide cases," but the Court "require[d the sentencing court] to take into

---

[5] The State does not agree that proper consideration of "youth and its attendant characteristics" requires consideration of these specific factors. The State asserts that *Miller* discusses certain "hallmark features" of youth, but that it does not require a sentencing court to specifically consider these factors on the record before imposing a sentence of life without parole. Because, as we shall explain, we shall hold that no individualized sentencing hearing was required because Hartless was not sentenced to life without parole, we need not examine the nature of such an individualized sentencing hearing. Indeed, such a discussion would be purely hypothetical.

account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

In *Montgomery*, *supra*, the Court further explained that "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." 136. S. Ct. at 735. The primary issue before the Court in *Montgomery* was whether the *Miller* holding was entitled to retroactive effect. The Supreme Court held that *Miller* announced a new substantive constitutional rule that was retroactive on state collateral review. 136 S. Ct. at 732. Although the *Montgomery* Court gave retroactive effect to *Miller*, the Court explained that this did "not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole." *Id.* at 736. Rather, a *Miller* violation could be remedied "by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id.*

Hartless does not expressly rely upon *Montgomery* or *Miller* for the principle that all juvenile homicide offenders are entitled to individualized sentencing processes regardless of whether they are sentenced to life without the possibility of parole. Indeed, if a *Miller* violation can be remedied simply by permitting a juvenile offender to be considered for parole, it is illogical to suggest that *Montgomery* and *Miller* somehow require an individualized sentencing process for *all juveniles* convicted of homicide, regardless of whether they are sentenced to life with or without parole.

Because neither *Montgomery* nor *Miller* addresses Hartless' appellate issue, it is unsurprising that Hartless relies only upon *Carter* for this principle. This issue, however,

10

was not the issue before the Court of Appeals in *Carter*. *Carter* addressed the constitutionality of a sentence of life imprisonment with parole for juvenile homicide offenders in Maryland and considered whether such a sentence violated the Eighth Amendment on the basis that it failed to provide a meaningful opportunity for release. The *Carter* Court recognized that the "Eighth Amendment's proscription against cruel and unusual punishments precludes [a sentence of life without parole] for a juvenile offender unless the defendant is an incorrigible murderer," but rejected the argument that life with the possibility of parole is effectively a sentence of life without parole. 461 Md. at 306-07. The Court of Appeals held that a sentence of life imprisonment with the possibility of parole for juvenile homicide offenders is legal "as the laws governing parole of inmates serving life sentences in Maryland, including the parole statute, regulations, and a recent executive order adopted by the Governor, on their face allow a juvenile offender serving a life sentence a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Id.* at 307.

The specific language in *Carter* cited by Hartless in support of his assertion that an individualized sentencing process taking into consideration a juvenile's youth is required for all juvenile homicide offenders is found at 461 Md. at 317. The *Carter* Court, after discussing various Supreme Court Eighth Amendment cases, set forth principles it derived "concerning the constitutional constraints on life sentences for juvenile offenders" and identifying the Supreme Court authority for each principle. This was presented by the Court via the following bullet point summary, which we quote verbatim:

11

- With respect to juvenile offenders convicted of offenses other than homicide, the Eighth Amendment categorically bars a sentence of life in prison without the possibility of future release from custody. *Graham*.

- With respect to juvenile offenders convicted of homicide:

  - there must be an individualized sentencing process that takes account of the offender's youth;

  - the defendant may be sentenced to imprisonment without the possibility of future release only if the court determines that the defendant is incorrigible. *Miller; Montgomery*.

- For all juvenile offenders who are convicted of non-homicide offenses and the vast majority who are convicted of homicide, there must be a "meaningful opportunity to obtain release" from custody based on "demonstrated maturity and rehabilitation." *Graham; Miller; Montgomery*.

- It is up to the states in the first instance to devise the means and mechanisms for providing such a meaningful opportunity. *Graham*.

- A parole system that takes into account the offender's youth at the time of the offense and demonstrated rehabilitation provides such a meaningful opportunity. *Graham; Miller*.

- There is no constitutional requirement that a state have a parole system *per se*, so long as the state provides a meaningful opportunity for release based on demonstrated maturity and rehabilitation. *Graham*.

- An executive clemency system that leaves the decision on release of an offender to the unfettered discretion of a

> public official or entity does not provide such a meaningful opportunity. *Rummel*;[6] *Solem*.[7]
>
> - While a state's criminal justice system must provide such a meaningful opportunity, it need not guarantee release. *Graham.*

*Carter*, *supra*, 461 Md. at 317-18.

Hartless quotes the second bullet point, pointing to this language: "With respect to juvenile offenders convicted of homicide . . . there must be an individualized sentencing process that takes account of the offender's youth." Hartless derives from this language that, in *Carter*, the Court of Appeals intended to recognize the right to an individualized sentencing process that takes account of the offender's youth for any and all juvenile offenders convicted of homicide, regardless of whether a sentencing court is considering imposing a sentence of life without parole.

To be sure, this statement, taken completely out of context, could provide support for Hartless' position. The context, however, is essential. This language was presented in a bullet point list summarizing Supreme Court authority. Critically, this language did not set forth the Court of Appeals' legal conclusions or holdings. The right identified in *Miller* and *Montgomery* pertains specifically to juvenile offenders sentenced to life imprisonment *without parole*, not to all juvenile homicide offenders. It is plain that the bullet point list set forth in *Carter* simply summarized the right identified in *Miller* and *Montgomery*

---

[6] *Rummel v. Estelle*, 445 U.S. 263 (1980).

[7] *Solem v. Helm*, 463 U.S. 277 (1983).

13

without including a portion of the relevant language identifying the group of juvenile offenders to whom the right applied. Indeed, Hartless' proposed reading of this language is illogical. As the State points out, this proposed right would have far-reaching implications for all juveniles who have previously been convicted of homicide in the State of Maryland. If the Court of Appeals intended to recognize this new right, it is unreasonable to believe that the right would be presented via a bullet point summary of Supreme Court authority. Rather, the right would be announced clearly and unambiguously.

Additional support for Hartless' argument is presented through quoted language from *Carter* absent its appropriate context. For example, Hartless asserts that the *Carter* Court "explain[ed] that 'if the defendant was convicted of homicide, the court will need to hold an individualized sentencing hearing to consider whether the defendant is incorrigible.'" The quoted language appears in the following paragraph of *Carter* (quoted language in bold):

> The implications of the Supreme Court's recent Eighth Amendment decisions for a case in which a court sentenced a juvenile offender to life without parole are very clear. In such a case, the defendant must be re-sentenced to comply with the holdings of *Graham* and *Miller*. **If the defendant was convicted of homicide, the court will need to hold an individualized sentencing hearing to consider whether the defendant is incorrigible.**

461 Md. at 333-34 (footnote omitted). By quoting only the bolded text, Hartless asserts that an individualized sentencing hearing is required for all juvenile offenders convicted of

14

homicide, while consideration of the quoted text within its greater context makes clear that this requirement applies only to juvenile offenders sentenced to life without parole.

Hartless cites page 341 of the Court of Appeals' opinion in *Carter* for the same proposition, but, again the context reflects a much narrower requirement. Hartless asserts, citing 461 Md. at 341, that "*Carter* held that *Miller* and *Montgomery* apply to all juveniles sentenced to life imprisonment." The *Carter* Court actually opined that "[i]f the structure of the Maryland parole system [did] render the sentences of" juvenile homicide offenders "effectively life without parole, then those sentences violate the Eighth Amendment and would therefore be illegal." 461 Md. at 341. In those circumstances, the juvenile offender "would be entitled to a new sentencing proceeding at which the court would consider whether he was one of the few juvenile homicide offenders who is incorrigible and may therefore be sentenced constitutionally to life without parole." *Id.* Critically, because the Court held that the Maryland parole system does not render the sentences of juvenile homicide offenders "effectively life without parole," resentencing was not required in *Carter*. The same applies in this case.

We find no support in *Carter* for Hartless' proposition that all juvenile offenders convicted of homicide have the right to an individualized sentencing process that takes account of the offender's youth.[8] In our view, the identification of Hartless' proposed right

---

[8] Indeed, it is unclear what Hartless proposes the right to an individualized sentencing hearing would require. Hartless identifies six factors that he asserts should be considered by a sentencing court, but then argues that the individual defendants in *Carter* and *Bowie* received individualized sentencings in compliance with *Miller* because the

15

is unsupported by the context of the various examples of quoted language, as well as inconsistent with Supreme Court authority. *Carter* held that a sentence of life imprisonment with the possibility of parole for juvenile homicide offenders does not violate the Eighth Amendment. This is the sentence Hartless received. We, therefore, reject Hartless' contention that his sentence is unconstitutional because he did not receive an individualized sentencing hearing at which the circuit court expressly considered his youth and attendant circumstances.

## II.

Hartless further asserts that his sentence is illegal "due to the structure of Maryland's parole system, which has the power to turn any application for parole into a request for executive clemency." First, we observe that this issue was addressed at least implicitly in *Carter* when the Court held that "the laws governing parole of inmates serving life sentences in Maryland, including the parole statute, regulations, and a recent executive order adopted by the Governor, on their face allow a juvenile offender serving a life sentence a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" 461 Md. at 307.

sentences were imposed "as a result of characteristics of the particular defendant" despite the fact that the sentencing court did not consider the six identified factors.

Furthermore, given that *Carter* held that a life sentence in Maryland is not effectively a life without parole sentence, it is unclear what an individualized sentencing requirement would accomplish. The trial court is required to impose a life sentence in homicide cases. Md. Code (2002, 2012 Repl. Vol.), § 2-201(b) of the Criminal Law Article. Although a sentencing court may choose to suspend part of a life sentence, Hartless does not explain under what circumstances a court would be required to exercise its authority to suspend a sentence pursuant to his proposed standard.

16

Furthermore, we disagree with Hartless' contention that the statutes and regulations governing executive clemency permit juvenile offenders serving a life sentence to be diverted from parole consideration. Hartless bases his argument on Md. Code (1999, 2017 Repl. Vol.) § 7-206(3) of the Correctional Services Article ("CS"), which provides that the Parole Commission "shall . . . review and make recommendations to the Governor . . . concerning parole of an inmate under a sentence of life imprisonment; and . . . if requested by the Governor, concerning a pardon, commutation of sentence, or other clemency." Hartless also cites COMAR 12.08.01.15(B), which provides that "[t]he Commission will recommend to the Governor a commutation of a life sentence where the case warrants special consideration or where the facts and circumstances of the crime justify special consideration, or both." Hartless asserts that these statutes and regulations "clearly bestow" authority to treat an application for parole as an application for executive clemency.

We disagree with Hartless' reading of the statute and the regulations. Executive clemency is not a substitute for parole consideration. Rather, executive clemency is an additional avenue of possible early release. The plain language of CS § 7-206(3) supports this conclusion. The Commission "shall . . . review and make recommendations to the Governor . . . concerning parole of an inmate under a sentence of life imprisonment." *Id.* This language is mandatory; the Commission is *required* to review **and** make recommendations to the Governor regarding parole. In addition, the Commission, "if requested by the Governor," shall make and review recommendations "concerning a pardon, commutation of sentence, or other clemency." *Id.* The Commission is only

17

involved in making recommendations with respect to pardons, commutations, or other clemency upon the request of the Governor.

Similarly, the regulations cited by Hartless fail to support his assertion that parole applications can be diverted into requests for executive clemency. COMAR 12.08.01.15 sets forth the circumstances under which the Commission considers a request for commutation when "all legal remedies are exhausted" and permits the Commission to "entertain these requests at a parole hearing, and in its discretion may deny the requests or submit it to the Governor with a recommendation." Nothing in the regulations cited by Hartless permits the diversion of a parole request into a request for executive clemency.

The Commission's role in the context of clemency is entirely separate from the Commission's role in the context of parole. In our view, the clear and unambiguous language of the statute and regulations do not support Hartless' contention that the Parole Commission is permitted to divert a meritorious parole request to a request for executive clemency.[9] We hold, therefore, that the laws and regulations governing executive clemency in Maryland do not render Hartless' sentence unconstitutional. Accordingly, the circuit court did not err by denying Hartless' motion to correct illegal sentence.

> **JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[9] As we discussed *supra* in footnote two, to the extent Hartless is challenging the practice of the Parole Commission and the Governor in making parole decisions, his claim is outside the scope of a motion to correct illegal sentence. *Carter*, *supra*, 461 Md. at 337.